## LLOYD SABAUDO SOCIETA ANONIMA PER AZIONI *v.* ELTING, COLLECTOR OF CUSTOMS.

No. 48. Argued November 11, 1932.—Decided December 5, 1932.

*Mr. Delbert M. Tibbetts,* with whom *Messrs. Gaspare M. Cusumano* and *Richard L. Sullivan* were on the brief, for petitioner.

*Assistant Attorney General Rugg,* with whom *Solicitor General Thacher* and *Mr. Paul D. Miller* were on the brief, for respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

Petitioner, a steamship transportation company, brought suit in the District Court for Southern New York, to recover from the Collector of Customs certain fines

alleged to have been illegally exacted by the Secretary of Labor under § 9 of the Immigration Act of 1917, c. 29, 39 Stat. 874, 880, or its amendment by § 26 of the Immigration Act of 1924, c. 190, 43 Stat. 153, 166, 8 U. S. C., § 145. The complaint stated fifteen causes of action, one for each fine involved. The trial court directed a verdict for the petitioner on three causes of action, the 9th, 11th and 15th, and for the respondent on all the others, and gave judgment accordingly. 45 F. (2d) 405; see also 46 F. (2d) 315. Upon appeal by both parties the judgment of the District Court was affirmed by the Court of Appeals for the Second Circuit, 55 F. (2d) 1048, except as to the 15th cause of action, with respect to which it was reversed. As certiorari was granted, 286 U. S. 539, on petition of the steamship company alone, only so much of the judgment below as decided in favor of the Collector is brought before us for review. *Federal Trade Commission* v. *Pacific Paper Assn.*, 273 U. S. 52, 66; *The Malcolm Baxter, Jr.*, 277 U. S. 323.

Section 9 of the Immigration Act, as amended, provides that:

" it shall be unlawful for any person, including any transportation company, . . . to bring to the United States . . . from a foreign country . . . any alien afflicted with idiocy; insanity, imbecility, feeble-mindedness, epilepsy, constitutional psychopathic inferiority, chronic alcoholism, tuberculosis in any form, or a loathsome or dangerous contagious disease, and if it shall appear to the satisfaction of the Secretary of Labor that any alien so brought to the United States was afflicted with any of the said diseases or disabilities at the time of foreign embarkation and that the existence of such disease or disability might have been detected by means of a competent medical examination at such time, such person or transportation company . . . shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of

$1,000, and in addition a sum equal to that paid by such alien for his transportation . . . , for each and every violation of the provisions of this section, such latter sum to be delivered by the collector of customs to the alien on whose account assessed. . . ."

The same section also makes it unlawful

" to bring to any port of the United States any alien afflicted with any mental defect other than those above specifically named, or physical defect of a nature which may affect his ability to earn a living, as contemplated in § 3 of this Act, and if it shall appear to the satisfaction of the Secretary of Labor that any alien so brought to the United States was so afflicted at the time of foreign embarkation, and that the existence of such mental or physical defect might have been detected by means of a competent medical examination at such time, such person shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $250, and, in addition a sum equal to that paid by such alien for his transportation. . . ."

Between the years 1923 and 1927 the petitioner brought to the United States in its vessels the thirteen aliens with respect to whose transportation the fines now in question were imposed. All were found, upon arrival, to be inadmissible because they were afflicted either with one of the diseases specified in § 9, or with a physical defect which might affect the alien's ability to earn a living. In each case in the proceedings before the Board of Special Inquiry to pass on the admissibility of the alien, the examining physicians of the Health Department certified to his diseased condition or disability on arrival, adding: " In our opinion the condition herein certified might have been detected by competent medical examination at the port of embarkation." In each instance the petitioner was notified of the certificate of the medical examiners, advised that such findings indicated its liability to fine

under § 9 of the Act of 1917 or its amendment of 1924, and given thirty or sixty days in which to have a hearing. In each case the petitioner responded to the notice by depositing the amount of the possible fine, in order to secure clearance of the vessel,[1] and transmitting an unverified letter of protest against the imposition of the fine, stating generally that it was the regular practice of the petitioner to have each immigrant carefully examined by competent doctors before embarkation and that, therefore, the disease or disability either did not exist at the time of embarkation or could not then have been discovered by means of competent medical examination, or was of such a nature as could not affect the alien's ability to earn a living. In one case, that of Fusco, stated in the tenth cause of action, the letter of protest was accompanied by affidavits, tending to confirm the statements contained in the protests. In all thirteen cases fines were imposed by the Secretary and the funds deposited by petitioner were retained by the Government.

The " files " or " records " upon which the Secretary of Labor based his decisions that the fines should be imposed, consisted in general of the transcript of the hearing and examination before the Board of Special Inquiry at Ellis Island, in which the admissibility of the alien was passed upon, which included a reference to the medical certificate, the petitioner's letter of protest and any accompanying documents, and various communications of an inter-departmental character relating to the disposition of the alien by the Secretary.

At the trial in the District Court, the petitioner introduced evidence which had not been presented to the Department of Labor tending to show that a competent med-

---

[1] The statute provides that no vessel shall be granted clearance pending a determination of the question whether the fine should be imposed, except upon deposit of the amount of the possible fine or of a bond to secure its payment.

ical examination had been made of the aliens at the port of embarkation and that the diseases or disabilities, on the basis of which the fines had been imposed, had not in fact been discovered and were not discoverable at that time by such an examination. Although the trial judge thought that this evidence tended to show in detail the thoroughness of the examinations and the competence of the physicians, he struck out this class of testimony and held, on the basis of the record made before the Secretary, that there was evidence supporting his action.

The petitioner contends here, as it did before the courts below, that the evidence offered at the trial was erroneously excluded; that if § 9 is construed to preclude a judicial trial of the issues before the Secretary, it denies to petitioner due process of law and, finally, that in any case the fines were not validly imposed because the Secretary of Labor abused the discretion reposed in him by the statute.

The first two objections are untenable. By the words of the statute the Secretary's is the only voice authorized to express the will of the United States with respect to the imposition of the fines; the judgment of a court may not be substituted for the discretion which, under the statute, he alone may exercise. In conferring that authority upon an administrative officer, Congress did not transcend constitutional limitations. Under the Constitution and laws of the United States, control of the admission of aliens is committed exclusively to Congress and, in the exercise of that control it may lawfully impose appropriate obligations, sanction their enforcement by reasonable money penalties, and invest in administrative officials the power to impose and enforce them. *Oceanic Navigation Co.* v. *Stranahan,* 214 U. S. 320; *Passavant* v. *United States,* 148 U. S. 214; see *Hampton & Co.* v. *United States,* 276 U. S. 394, 406; *Navigazione Libera Triestina* v. *United States,* 36 F. (2d) 631; *Zakonaite* v. *Wolf,* 226 U. S. 272, 275.

In *Oceanic Navigation Co.* v. *Stranahan, supra,* this Court upheld the constitutionality of § 9 of the Immigration Act of 1903; c. 1012, 32 Stat. 1213, 1215, which is substantially the same as the present section, except that it imposed smaller penalties. Petitioner contends that as the fines have been increased tenfold, the issue of liability has become so grave that the *Stranahan* case is no longer controlling and the imposition of the fines by administrative action is a denial of due process unless opportunity is afforded at some stage to test their validity in court by a trial of the facts *de novo.*

As was pointed out in the *Stranahan* case, the statute imposing the fines must be regarded as an incident to the exercise by Congress of its plenary power to control the admission of aliens, and due process of law does not require that the courts, rather than administrative officers, be charged, in any case, with determining the facts upon which the imposition of such a fine depends. It follows that as the fines are not invalid, however imposed, because unreasonable or confiscatory in amount, which is conceded, Congress may choose the administrative rather than the judicial method of imposing them. Indeed, the Court rested its decision in *Oceanic Navigation Co.* v. *Stranahan, supra,* on the authority of cases arising under the revenue laws, authorizing the administrative imposition of civil penalties frequently much greater than those imposed here. *Bartlett* v. *Kane,* 16 How. 263, 274; *Passavant* v. *United States, supra; Origet* v. *Hedden,* 155 U. S. 228; see *Murray's Lessee* v. *Hoboken Land & Imp. Co.,* 18 How. 272.

The action of the Secretary is, nevertheless, subject to some judicial review, as the courts below held. The courts may determine whether his action is within his statutory authority, compare *Gonzales* v. *Williams,* 192 U. S. 1; *Gegiow* v. *Uhl,* 239 U. S. 3, whether there was any evidence before him to support his determination,

compare *Vajtauer* v. *Commissioner of Immigration,* 273 U. S. 103, and whether the procedure which he adopted in making it satisfies elementary standards of fairness and reasonableness, essential to the due administration of the summary proceeding which Congress has authorized. Compare *Kwock Jan Fat* v. *White,* 253 U. S. 454; *Tang Tun* v. *Edsell,* 223 U. S. 673; *Chin Yow* v. *United States,* 208 U. S. 8, 12; *The Japanese Immigrant Case,* 189 U. S. 86, 100, 101; see *United States ex rel. Iorio* v. *Day,* 34 F. (2d) 920; *Whitfield* v. *Hanges,* 222 Fed. 745.

The statute plainly authorizes the imposition of the fine only if it shall appear, to the satisfaction of the Secretary, that the existence of the disease or disability for which the alien was excluded, " might have been detected by means of a competent medical examination " at the time of sailing. That § 9 imposed upon the Secretary the official duty and responsibility of making such a determination was held by both courts below and is not questioned by the Government. Accordingly, his action in particular cases is subject to judicial review, within the limits mentioned. Whether, as was suggested in the *Stranahan* case, *supra,* 332, 342, Congress, while adhering to the statutory declaration that the fine is incurred only when the alien's disease or disability could have been detected by competent medical examination at the point of embarkation, might constitutionally provide that the certificate of the examining physician at the port of entry should be conclusive as to that fact, we need not determine. We think it clear, despite language in the *Stranahan* case intimating a different view, that the statute, as it has been consistently construed administratively,[2] con-

---

[2] Ever since the promulgation by the Department of Commerce and Labor, in January, 1905, of Department Circular No. 58, the administrative regulations have provided for a hearing. See Immigration Regulations of July 1, 1907, Rule 28, amended December, 1910; Immigration Rules of November 15, 1911, Rule 28, amended

templates that the Secretary should fairly determine, after a hearing and upon the evidence, the facts establishing its violation.

Hence, we pass to the petitioner's remaining contention, that the action of the Secretary here in determining liability was arbitrary and unfair. In all of the cases before us the Secretary's decision was supported by at least one item of evidence. It was the certified opinion of the examining physicians of the Health Department, based upon a physical examination of the alien in the proceeding in which his admissibility was determined, that at an earlier date, that of embarkation, the existence of the disease with which he was afflicted upon arrival might have been detected by competent medical examination. This opinion as to the physical condition of the alien at the time and place of embarkation was not accompanied by a statement of the facts observed. Nevertheless, it was some evidence tending to establish the discoverability of the disease at the time of embarkation.

In all the cases but that of Fusco the evidence presented to the Secretary, in support of the petitioner's contention that the disease or disability could not have been discovered by competent medical examination at the point of embarkation, consisted of the general statement in the protests that it was the practice of the company to conduct such an examination and, in a few instances, that the alien had received a consular visa. Petitioner argues

---

October, 1915; Immigration Rules of May 1, 1917, Rule 28, amended August, 1922; Immigration Rules of February 1, 1924, Rule 22; Immigration Rules of July 1, 1925, Rule 22; Immigration Rules of March 1, 1927, Rule 22; Immigration Rules of January 1, 1930, Rule 23.

During this time the general provisions of § 9 of the Act of 1903, 32 Stat. 1213, 1215, have been reënacted three times. § 9, Act of 1907, 34 Stat. 898, 901; § 9, Act of 1917, 39 Stat. 874, 880; § 26, Act of 1924, 43 Stat. 153, 166.

that the alien must have received a medical examination in order to secure the visa. But, the protest did not assert that such was the fact, or invite the Secretary to consider it. No details were presented showing the nature or results of any medical examination claimed to have been made before sailing.

As the protests were not rejected by the Secretary, the facts they disclosed were properly before him and were evidence which, in an administrative proceeding, must be considered and acted upon by the administrative officer. *Vajtauer* v. *United States, supra; Tang Tun* v. *Edsell, supra.* But we cannot say, on the records before us, that the Secretary did not consider them, as such, for what they were worth, regarding the official medical certificates as conflicting evidence entitled to greater weight. No ground exists, therefore, for setting aside his determination in these cases. The only question is the weight of the evidence, as to which the Secretary's conclusion is final. Compare *Zakonaite* v. *Wolf, supra.*

In the case of Fusco, affidavits were submitted along with the protest and the two together tended to show with some certainty that the alien had been subjected to three medical examinations shortly before embarkation, once by the Royal Italian Immigration Service in Naples, once by a physician there enjoying the confidence of the American Consul, whose certificate was available to the Secretary, and once by petitioner's own ship physician, all of whom found the immigrant in good health.

The letter imposing the fine in the *Fusco* case does not show definitely whether the Secretary considered the evidence submitted by petitioner. It recites in one place, " The alien gave no history of the disease. Indeed, he was not questioned with regard thereto, and the only evidence in the record is the official certificate itself," and in another, " It is believed that the evidence placed in the record by the company is not sufficient to call into ques-

tion the accuracy of the opinion expressed in the official medical certificate." We need not inquire whether this ambiguity in the record of itself requires the administrative determination to be set aside. Cf. *Tod* v. *Waldman,* 266 U. S. 113, 119, 120; *Mahler* v. *Eby,* 264 U. S. 32, 43; *Kwock Jan Fat* v. *White, supra,* 464. For the same result must follow if the record is considered, whichever way the doubt is resolved. If the Secretary failed to consider evidence before him, he exceeded his authority. If he treated the protest and affidavits as evidence relevant to the issue of the discoverability of the immigrant's disease at the time of sailing, but, nevertheless, chose to rely upon the certified opinion of the examining physicians at Ellis Island, we think that more is involved than the weighing of the evidence, and that his determination cannot stand. For the medical opinions did not reveal the facts upon which they were based, and they were formulated by physicians who, so far as appears, were not apprised of the fact that three previous examinations of the nature described had been made. The detailed information as to those examinations which petitioner submitted to the Secretary in this case might reasonably have affected the expert judgment of the physicians at Ellis Island. In relying upon their opinion alone, without putting these additional facts before them, we think the Secretary acted arbitrarily and unfairly.

The Act of Congress confers on the Secretary great power, but it is not wholly uncontrolled. It is a power which must be exercised fairly, to the end that he may consider all evidence relevant to the determination which he is required to make, that he may arrive justly at his conclusion, and preserve such record of his action that it may be known that he has performed the duty which the law commands. Suppression of evidence or its concealment from a party whose rights are being determined by the administrative tribunal, has been held to be so unfair

as to invalidate the administrative proceeding. *Kwock Jan Fat* v. *White, supra; Lewis* v. *Johnson,* 16 F. (2d) 180. It is equally offensive to conceal from the experts, whose judgment is accepted as controlling, facts which might properly have influenced their opinion.

Petitioner makes contentions, with respect to several of the cases, which require special consideration. They embrace the cases of aliens with physical defects affecting their ability to earn a living, aliens who came to the United States with a transit visa for the purpose of passing through the United States to their ultimate destination, Canada, and the case of an alien who came to the United States to enroll as a member of the crew of a vessel to be taken back to Italy. All entered or sought to enter the United States, and all were afflicted with a disease or disability specified in the statute. That their admissibility could not be determined in advance of their reaching the United States, that they were not seeking to remain permanently within the United States, are immaterial in the face of the express language of the statute, which imposes the penalty for bringing them here. See *Elting* v. *North German Lloyd,* decided this day, *ante,* p. 324.

Crimi, who was blind, a disability which might affect his ability to earn a living, came to the United States as a student. He had a consular visa under § 4 (e) of the Act of 1924, c. 190, 43 Stat. 155, 8 U. S. C., § 204, which exempts from the quota students coming to the United States to attend an accredited school. To exempt the alien from the quota under § 4 (e), the school which he comes to attend must have been approved by the Department of Labor, and a list of such accredited schools is supplied to all American consuls. The alien was excluded because he did not come for the purpose of study at an accredited school. The petitioner insists that it was entitled, on the basis of the consular visa, to assume that the alien was admissible. But § 16 of the applicable Im-

migration Act of 1924, c. 190, 43 Stat. 163, 8 U. S. C., § 216, imposes the fine for bringing any quota immigrant, which Crimi was found to be, having a non-quota visa. It provides that the fine shall not be remitted or refunded unless it appears to the satisfaction of the Secretary of Labor that the vessel or transportation company " could not have ascertained, by the exercise of reasonable diligence " that the individual transported was a quota immigrant. The consular visa did not make Crimi a non-quota immigrant entitled to enter. Immigration Act of 1924, § 2 (g), 8 U. S. C., § 202 (g). To secure remission of the fine, the statute placed upon petitioner the burden of establishing to the satisfaction of the Secretary, that it could not have been ascertained by the exercise of reasonable diligence that the alien was a quota immigrant. Compare *Elting* v. *North German Lloyd, supra.* We cannot say that the Secretary did not have ground for holding that reasonable inquiry of the alien or the Consul issuing the visa would have disclosed to petitioner that the alien was not coming to the United States for the purpose of studying in an accredited school.

The judgment will be reversed as to the tenth cause of action and affirmed as to all the others.

*Reversed in part.*