SAN SOUCI, Collector of Customs, v. COMPAGNIE FRANCAISE DE NAVIGATION A VAPEUR.

No. 2899.

Circuit Court of Appeals, First Circuit.

June 1, 1934.

Rehearing Denied July 12, 1934.

George C. Sweeney, Asst. Atty. Gen. (Henry M. Boss, Jr., U. S. Atty., of Providence, R. I., and W. S. Ward, of Washington, D. C., for appellant.

Cornelius F. Keating, of Boston, Mass. (Justin P. McCarthy, of Providence, R. I., and A. Warner Parker, of Washington, D. C., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

The plaintiff, a steamship transportation company, brought this suit in the District Court for Rhode Island to recover from the defendant, Collector of Customs, two fines alleged to have been illegally exacted by the Secretary of Labor under section 9 of the Immigration Act of 1917 (39 Stat. 874, 880), as amended by section 26 of the Immigration Act of 1924 (43 Stat. 153, 166 [8 USCA § 145]). The complaint includes two causes of action; one for each of the fines involved. A trial was had before the court on an agreed statement of facts, trial by jury being duly waived, and inasmuch as it appeared that before embarkation both aliens had been examined by competent physicians and by at least one physician selected by the United States consul, and that these circumstances were not presented to the physician of the health department at Providence who had filed a certificate with the Board of Special Inquiry that each alien was suffering with "trachoma, a dangerous contagious disease which might have been detected at the port of embarkation by competent medical examination," the court found that the Secretary of Labor, under the facts of the case, acted arbitrarily in finding that the aliens were afflicted with a dangerous contagious disease which might have been detected at the port of embarkation by competent medical examination, and entered judgment in favor of the plaintiff (under the first count of the declaration in the sum of $1,100, with interest of $105.87 and, under the second, in the sum of $1,087.57, with interest of $104.28), and the defendant appealed.

Section 9 of the Immigration Act 1917, as amended, 43 Stat. 166 (8 USCA § 145), provides:

"Sec. 9. It shall be unlawful for any person, including any transportation company * * * to bring to the United States * * * from a foreign country " ; ' any alien afflicted with idiocy, insanity, imbecility, feeble-mindedness, epilepsy, constitutional psychopathic inferiority, chronic

alcoholism, tuberculosis in any form, or a loathsome or dangerous contagious disease, and if it shall appear to the satisfaction of the Secretary of Labor that any alien so brought to the United States was afflicted with any of the said diseases or disabilities at the time of foreign embarkation, and that the existence of such disease or disability might have been detected by means of a competent medical examination at such time, such person or transportation company * * * shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000, and in addition a sum equal to that paid by such alien for his transportation * * * for each and every violation of the provisions of this section, such latter sum to be delivered by the collector of customs to the alien on whose account assessed. * * * "

In 1930 (March 14) the plaintiff brought into the United States at Providence on one of its steamships an alien woman named Marian der Manouelian, a native of Syria, and on February 14 of the same year, on another of its steamships, an alien man named Baghdassar Azadian, likewise a native of Syria, with respect to whose transportation the fines were imposed. Both upon arrival were found to be inadmissible because they were afflicted with trachoma, a dangerous contagious disease, within section 9.

In the proceedings before the Board of Special Inquiry to pass upon the admissibility of the aliens, the physician of the Health Department at Providence certified in each case that the applicant was afflicted with "trachoma, a dangerous contagious disease which might have been detected at port of embarkation by competent medical examination."

In each case the plaintiff was notified of the certificate of the medical examiner, advised that such finding indicated its liability to a fine under section 9 of the Immigration Act of 1917, as amended by section 26 of the Immigration Act of 1924, and was given 60 days in which to have a hearing. The plaintiff responded to the notice by depositing $1,000, plus $100 passage money, in the case of the female alien, and $1,000, plus passage money of $87.50, in the case of the male alien, and in each case transmitted an unverified letter of protest against the imposition of the fine, stating that it was satisfied from an investigation of each case that its agents in Marseilles complied with the requirements of the Immigration Law in accepting the aliens for transportation; that its Marseilles office informs them that "every

alien passenger originating in Marseilles is subject to at least four examinations—before obtaining a visa a medical examination is made by Dr. Cannebier, designated for that purpose by the American Consulate, that the second examination is conducted by an eye specialist, Dr. de Rocca Serra, that when the prospective passenger is vaccinated, also by Dr. Cannebier, he must undergo a third examination covering general hygiene, and that the ship's doctor, in the regular course of the performance of his duties, examines every such passenger several times on the voyage across." The letters of protest were accompanied by affidavits tending to confirm the statements contained in the protests.

The evidence upon which the Secretary of Labor based his decision that fines should be imposed consisted of a transcript of the hearing and examination before the Board of Special Inquiry at Providence in which the admissibility of the aliens was considered, which comprised the medical certificates, the plaintiff's letters of protest, and the accompanying papers and affidavits. At the hearing before the Board of Special Inquiry both aliens testified; and in each case there was also received a further statement made by the physician of the health department, as hereafter set forth.

The main question raised by the assignments of error is whether or not the Secretary of Labor, in imposing the fines, abused his discretion because, in connection with all the other evidence, he took into consideration the opinion certified by the physician of the health department—to the effect that the contagious disease of the aliens might have been detected at the port of embarkation by competent medical examination—without having previously submitted to the physician the letters of protest and the affidavits presented to the Secretary tending to show that each alien had been subjected at the port of embarkation to three or four medical examinations by competent physicians.

In the court below the District Judge, in view of the fact that the Secretary of Labor did not submit the protests and accompanying affidavits to the physician of the health department, found and ruled that the Secretary had abused his discretion, and that the case fell within Lloyd Sabaudo Societa v. Elting (Fusco Case), 287 U. S. 329, 339, 53 S. Ct. 167, 172, 77 L. Ed. 341, in which it was held that the Secretary of Labor, by failing in this respect, had abused his discretion.

We think that the situation presented by the evidence in these cases is quite different

from that in the Fusco Case. There the protests and the affidavits accompanying the same set forth that the alien (Fusco) was examined on three different occasions by competent physicians before being accepted for passage: "that no trace of the said disease was discovered at any of those occasions; that the disease, if really in existence at the time of embarkation, was not then detectable." And it further appeared in that case that the "alien gave no history of the disease. Indeed, he was not questioned with regard thereto, and the only evidence in the record is the official certificate itself."

In these cases, on the other hand, it appears that the aliens testified; that in the first case the alien testified that "her eyes had been treated and she knew her eyes were diseased"; that "she was treated by an outside doctor and then the Fabre Line doctor said 'I was all right.'" And the physician of the health department at Providence, in addition to his original certificate, gave a further statement in evidence to the effect that "the case is an old case of trachoma and in my opinion will not yield to treatment without a very extended course of treatment."

In the second case the alien testified that "he had treatment at Marseilles and the doctor said that he was all right and then he went to the consul and he gave him a visa"; that "he went to a doctor to have his eyes treated at Marseilles because * * * he wanted to be sure if there was anything the matter with his eyes. * * * The doctor said he had trachoma." And his father testified that he "heard two or three months ago he was being treated for eye trouble." And a further statement by the physician of the health department was received stating: "In this case most of the condition is scarred tissue with a few streaks, and there is a possibility of its being cleared up in a comparatively short time."

Furthermore, in the first of the instant cases it did not appear in the protest of the plaintiff or the medical certificates contained in the affidavits accompanying it "that no trace of the said disease was discovered at any of those occasions" as in the Fusco Case, for in the affidavit concerning the alien woman it appears that she was "en traitement"; that "she was afflicted with trachoma not contagious." And in the second case of the alien man the affidavit accompanying the protest stated that "on presentation of regularly established medical certificates and duly visaed passport and consular papers, the Fabre Line did not see any objection to deliver a regular

ticket to this passenger who was considered as being entirely safe and likely in good conditions to be admitted in U. S. A."

It is entirely plain that in the instant cases the Secretary of Labor, in passing upon the question whether fines should be imposed upon the steamship line, did not rest his decision solely upon the bare opinion of the physician of the health department at Providence, but had before him other evidence tending to show the existence of the disease and its discoverability at the port of embarkation. In this situation it cannot be said that the Secretary of Labor relied upon the certificate of the examining physician at Providence alone, or acted arbitrarily and unfairly. On the contrary, the only question is one of the weight to be given the evidence, upon which the conclusion of the Secretary is final. Lloyd Sabaudo Societa v. Elting, 287 U. S. 329, 338, 53 S. Ct. 167, 77 L. Ed. 341.

The judgment of the District Court is vacated, and the case is remanded to that court, with directions to enter judgment for the defendant appellant, with costs in both courts.

MORTON, Circuit Judge (concurring).

If it had appeared by evidence under oath from the three physicians who examined these aliens at the port of embarkation, one of whom appears to have been approved by the American Consulate and another to have been an occulist of standing, that the trachoma was then so far healed as not to be contagious and that there was no reason in the nature of the disease to expect that it would light up again on the voyage, I should think that the Secretary's action was indefensible. No fair-minded person could reasonably reject such evidence and conclude that a competent medical examination of the alien would have discovered trachoma in a contagious form at the time of embarkation, upon a mere opinion to that effect by a single physician who did not see the aliens until some weeks afterward. The difficulty with the case is that no evidence under oath by the foreign physicians was presented, and from only one of them was a signed certificate offered. The examinations and findings of the other two were brought before the Secretary only in hearsay form by an affidavit of the steamship company's agent. The case is still close, but I am not prepared to say that under such circumstances the Secretary might not reasonably follow the opinion of the health service doctor. I therefore concur in the result.