## COMPAGNIE GENERALE TRANSATLANTIQUE v. ELTING, Collector of Customs.

### No. 22.

Circuit Court of Appeals, Second Circuit.

Nov. 5, 1934.

Edward J. Garity, of New York City, and Roger O'Donnell, of Washington, D. C., for appellant.

Martin Conboy, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

This action was brought for the recovery of a fine of $1,000, plus passage money in the sum of $115, which the Secretary of Labor had imposed upon the plaintiff for bringing to the United States an alien afflicted with a dangerous contagious disease, the existence of which might have been detected by a competent medical examination at the time of foreign embarkation. 8 USCA § 145. The alien embarked upon the plaintiff's vessel at Havre, France, on August 28, 1930; he arrived at the port of New York on September 4th and was placed in the hospital at Ellis Island. On September 12th two physicians of the United States Public Health Service examined the alien and certified that he was "afflicted with trachoma, which is a dangerous contagious disease," and that in their opinion this condition might have been detected by a competent medical examination at the foreign port of embarkation. After a hearing before a board of special inquiry, the alien was excluded, and the plaintiff was notified of the proposed imposition of a fine. In its protest, the plaintiff stated that the alien had been granted a quota immigration visa after a thorough examination by a doctor in Bagdad who had certified on May 5, 1930, that the alien was free from any infectious or contagious disease. The plaintiff also submitted an affidavit executed on August 3, 1931, by Dr. Henri Males, the ship's surgeon, that he gave the alien "a strict medical examination" at the time of embarkation, and

L. HAND, Circuit Judge, dissenting.

that "such examination disclosed no sign or symptom of trachoma or other eye disease." Dr. Males' affidavit stated also that he was a graduate of the Medical School of Toulouse and had had more than four years of experience in the actual practice of medicine. The Secretary of Labor then referred the case back to the authorities at Ellis Island, and an additional medical certificate was issued on March 18, 1932, by Dr. Sweet, medical director of the United States Marine Hospital. This certificate reaffirmed the opinion of the medical officers that the alien's trachomatous condition was detectable at the port of foreign embarkation, "the clinical notes indicating that scar tissue was present on the right upper lid and there were areas of granulations indicating active trachoma." After consideration of the foregoing facts, the Secretary of Labor determined that a fine should be imposed.

The appellant contends that it had incurred no liability to a fine because the ship's surgeon had made a competent medical examination of the alien at the time of embarkation and had detected no sign of trachoma. This argument rests upon the premise that paragraph 3 of chapter 1 of the Regulations of August 20, 1930 governing the medical examination of aliens, promulgated by the Surgeon General of the United States Health Service pursuant to section 16 of the Immigration Act of 1917 (8 USCA § 152), defines the term "competent medical examination." In our opinion these regulations refer only to examinations of aliens upon arrival in the United States. But even if it be assumed that the definition applies also to examinations at ports of embarkation, there is no evidence that the examination conducted by Dr. Males falls within the definition, for it does not appear that his examination was "performed in accordance with these regulations." He says nothing of how he performed it, but merely characterizes it as a "strict medical examination." The appellant's argument fails to recognize that there is a distinction between a competent examination and an examination by a competently qualified physician—a distinction pointed out by this court in Lloyd Sabaudo Societa v. Elting, 55 F. (2d) 1048, 1050. It is not enough that the steamship company employ a competent physician; he must make a competent examination; if he negligently fails to detect the existence of a dangerous contagious disease, the company is chargeable with knowledge of facts that a competent examination would have disclosed.

The appellant also urges that the action of the Secretary of Labor was arbitrary and unfair because he did not submit to the examining medical officers at the port of arrival the shipowner's evidence bearing on the detectability of the disease at the time of embarkation, namely, that the alien had been examined by the doctor in Bagdad in May, 1930, and by Dr. Males when he embarked, and neither had found signs of trachoma. This contention is based on the case of the alien, Fusco, in Lloyd Sabaudo Societa v. Elting, 287 U. S. 329, 339, 53 S. Ct. 167, 77 L. Ed. 341.

In the case of Fusco, who was barred because of chronic pulmonary tuberculosis, affidavits were submitted with the protest tending to show "with some certainty" that the alien had been subjected to three medical examinations shortly before embarkation and was found by all to be in good health. In reversing the fine imposed with respect to this immigrant, Mr. Justice Stone noted that the medical opinions of the examining physicians at Ellis Island did not reveal the facts upon which they were based, and were formulated by physicians who were not, so far as appears, apprised of the three previous examinations. The opinion then continues:

"The detailed information as to those examinations which petitioner submitted to the Secretary in this case might reasonably have affected the expert judgment of the physicians at Ellis Island. In relying upon their opinion alone, without putting these additional facts before them, we think the Secretary acted arbitrarily and unfairly."

In the case at bar the Secretary did not rely solely upon the formal opinion of detectability of the disease at embarkation first submitted by the physicians at Ellis Island; he procured an additional certificate from Dr. Sweet which disclosed the clinical data upon which the medical opinions were based. Whether Dr. Sweet was apprised of the examinations by the Bagdad doctor on May 5th and by the ship's surgeon on August 28th does not affirmatively appear from the record; but in any event the former examination was so remote in time and both so general in character that it seems unreasonable to suppose that Dr. Sweet's expert judgment would have been affected by knowledge of such prior examinations without any details as to their character and scope. No "detailed information as to those examinations," in the words of Mr. Justice Stone, was submitted by the appellant. Dr. Males' affidavit recited merely that he "gave a strict medical examination" and found "no sign or symptom of

trachoma or other eye disease." He gives no details of the character of his examination; he does not assert there was no scar tissue or granulation of the lids, nor does he even say that he everted the eyelids to look for it. In the Fusco Case (Lloyd Sabaudo Societa v. Elting), the certificate was at least sufficiently detailed to show an examination of the immigrant's lungs, and it suggested that the sea voyage might have caused a previously non-detectable tubercular condition to become apparent. We do not understand the Supreme Court's opinion to lay down a hard and fast rule to the effect that whenever the shipowner presents a certificate by a doctor of adequate experience that he made a medical examination upon embarkation and found no trace of the disease discovered upon arrival, the Secretary must transmit this information to the physicians at Ellis Island if he would escape the charge of arbitrary action and an unfair hearing. Rather the test is whether the certificate is such as might reasonably affect the judgment of the examining physicians at the port of arrival; if it is, and the Secretary, without submitting it to them, relied solely on their formal opinion unsupported by the medical or clinical facts on which it is based, the hearing is unfair. That was not the situation at bar. See, also, San Souci v. Campagnie Francaise, etc., 71 F.(2d) 651 (C. C. A. 1). In our opinion the present case is distinguishable from the case of Fusco for the reasons above stated.

Accordingly, the judgment is affirmed.

L. HAND, Circuit Judge (dissenting).

I doubt whether in these cases it will ever make any practical difference to submit to the departmental surgeons the affidavit of a foreign physician that he examined the alien on embarkation and found him whole. But I really cannot find any distinction between this case and Fusco's Case (Lloyd Sabaudo Societa v. Elting) 287 U. S. 329, 338, 53 S. Ct. 167, 77 L. Ed. 341. The affidavit there did not particularize the examination any more than it did here; indeed, it would be rather a suspicious circumstance if the foreign physician had especially directed his attention to just that part of the alien's body where the defect later developed. Nor do I see that the greater particularity of the local surgeon's certificate in the case at bar should count. The Secretary's ruling in Fusco's Case (Lloyd Sabaudo Societa v. Elting), as I understand it, would not have stood any better if the surgeons had specified in detail why they thought the defect could have been found out at embarkation; the trouble was that the Secretary had withheld the opinion of the foreign physicians. When we consider that the Supreme Court based its ruling precisely upon the existence of such an affidavit, and rejected equivalent assertions in the carrier's protest, it does seem to me that we must understand them to have thought the difference critical, and that we ought to make it such, until we are otherwise advised, whatever might be our independent judgment.