## TRANSATLANTICA ITALIANA v. ELTING, Collector of Customs.

## LLOYD SABAUDO SOCIETA ANONIMA PER AZIONI v. SAME.

### Nos. 215, 233.

Circuit Court of Appeals, Second Circuit.
March 4, 1935.

Kirlin, Campbell, Hickox, Keating & Mc-Grann and Gaspare M. Cusumano, all of New York City (Delbert M. Tibbetts and Joseph F. Luley, both of New York City, of counsel), for plaintiffs-appellants.

Martin Conboy, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

These appeals, though by different plaintiffs, were argued together, and one opinion will suffice for both. They relate to fines imposed upon steamship companies for bringing inadmissible aliens to this country and paid under protest.

In the Transatlantica Case there were twelve causes of action, but only the judgments in the fifth, seventh, tenth, and twelfth causes are in issue. In the Lloyd Sabaudo Case, which originally comprised ten causes of action, an appeal was taken only from the judgments in the fifth and sixth causes.

Both of the causes of action in the Lloyd Sabaudo appeal and the fifth, seventh, and tenth causes in the Transatlantica appeal have to do with illiterate aliens who were excluded under section 3 of the Immigration Act of 1917 (8 USCA § 136). No serious effort has been made to show that the appellants could not have detected the illiteracy of the aliens before embarkation had they made a reasonable effort to do so.

The two aliens involved in the Lloyd Sabaudo Case, Sylvestro De Vellis and Giueseppe Rea, were both natives of Italy who had previously resided in the United States and had re-entry permits. They were brought by the appellant to the port of New York on February 28, 1925, on one of its ships, and were there excluded. In each case the exclusion was affirmed by the Secretary of Labor, and a writ of habeas corpus was later dismissed in the District Court for the Southern District of New York.

De Vellis had resided in this country lawfully from 1912 to 1914, when he returned to Italy for service in the Italian Army during the World War. He came back

here in 1920, was admitted as a reservist, and remained here until October, 1924, when he returned to Italy for the visit from which he was returning when excluded. He had declared his intention to become an American citizen in February, 1924.

Rea resided here from 1909 to 1915, when he too went to Italy to join the army. He returned in 1920 as a reservist and remained here until December, 1924, when he went back to Italy on the visit from which he was returning when excluded.

The three illiterates in the Transatlantica appeal are Giuseppe Esposito, Salvatore Lucido, and Giuseppe Ballerini, who are all Italian citizens.

Esposito had a re-entry permit issued at Washington February 14, 1924, and represented to the appellant when he applied for passage that he was returning to an unrelinquished domicile in this country which began in 1909 and continued until he sailed for Italy on the 4th of November, 1924. He was brought to New York, where he arrived June 5, 1925. He failed to establish such a domicile and was excluded. He then changed his story and claimed that he had first come here in 1910, had returned to Italy to join the colors in 1915, and had returned to this country as a reservist on September 25, 1920, but the decision to exclude him remained unchanged.

Lucido was excluded upon his arrival on April 23, 1925. He had resided here from 1902 until 1910 and from 1913 until March, 1916, when he returned to Italy to serve in the army. He had re-entered the United States in March, 1921, as a reservist, and had remained here until November 1, 1924, when he had left for the visit to Italy from which he was returning when excluded.

Ballerini had never been in this country before his arrival on May 27, 1926, when he was excluded. He had a nonquota visa issued at Leghorn describing him as a temporary visitor, and had in fact come here for only a short visit. He did not apply to the Secretary of Labor for admission as a matter of discretion.

These fines were imposed under section 9 of the Immigration Act of 1917, as amended (8 USCA § 145). It is insisted that they are recoverable because, even though the appellants did know, or should have known, that these aliens were illiterate, they were justified in believing either that the first four were exempt from the reading test or were returning to unrelinquished continu-

972

eus domiciles of such length that they could be admitted in the discretion of the Secretary of Labor in accordance with the provisions of section 3 of the above act (8 USCA § 136). As to Ballerini, it is urged that as an otherwise inadmissible alien seeking temporary admission he was admissible under 'rules prescribed by the Commissioner General of Immigration with the approval of the Secretary of Labor (see above statute subdivision (q). The Immigration Rules of July 1, 1925, so prescribed provide in Rule 3, M. (1) (d) that aliens over 16 years of age are exempted from the reading test if they have previously resided lawfully in the United States continuously for five years and return within six months from the date of their departure. One of the provisos in section 3, supra, makes the same exemption without reference to age. There is no standing rule for the admission of an illiterate as a temporary visitor, but special rulings are made upon application.

Section 9 of the Immigration Act of 1917, as amended (8 USCA § 145), provides in part: " * * * It shall also be unlawful for any such person to bring to any port of the United States any alien who is excluded by the provisions of said section 3 of this act [section 136] because unable to read, or who is excluded by its terms as a native of that portion of the Continent of Asia and the islands adjacent thereto described in said section; and if it shall appear to the satisfaction of the Secretary of Labor that these disabilities might have been detected by the exercise of reasonable precaution prior to the departure of such aliens from a foreign port," a fine is imposed and the return of the passage money exacted. It seems best now to note especially an inherent limitation upon the immunity from the penalty provided by section 9 of the Immigration Act of 1917, as amended (8 USCA § 145), for bringing illiterate aliens to the United States. This immunity is not contingent upon establishing to the just satisfaction of the Secretary of Labor that no reasonable precaution prior to the departure of the alien from a foreign port would have disclosed inadmissibility, but upon so establishing that it would not have disclosed the disability, i. e., the inability to read. Unless the carrier does so excuse the bringing of an illiterate to this country, the penalty of section 9, supra, follows as a matter of law whenever the illiterate is excluded. Except when exempt from the reading test, an illiterate alien who comes here to re-

side either permanently or temporarily is admissible only in the discretion of the Secretary of Labor. Whenever in such cases the Secretary of Labor justly decides that reasonable precaution prior to foreign embarkation would have enabled the steamship company to have detected illiteracy and such alien is nevertheless brought here, it is subject to the penalty. The excluding disability is illiteracy, and it is the neglect to ascertain that condition which is the basis of the imposition of the fine. A steamship company that transports an excludable alien to this country in the hope or belief that he will be admitted in the discretion of the Secretary of Labor does so at its own risk. See Elting v. North German Lloyd, 287 U. S. 324, 53 S. Ct. 164, 77 L. Ed. 337; Lloyd Sabaudo v. Elting, 287 U. S. 329, 53 S. Ct. 167, 77 L. Ed. 341; New York & Porto Rico S. S. Co. v. United States (C. C. A.) 66 F.(2d) 523; Cosulich Societa Triestina Di Navigazione v. Elting (C. C. A.) 66 F.(2d) 534; Lamport & Holt, Ltd. v. Elting (C. C. A.) 64 F.(2d) 93.

While some reliance is placed upon a supposed practice in the Department of Labor to exercise discretion with liberality in the admission of illiterate aliens, we can give that no effect even if it is true. It would, in any event, be only a matter which might be considered by the carrier in deciding whether to assume the risk involved in bringing such aliens to an American port to apply for admission. It would not curtail the free exercise of whatever discretion the circumstances in each particular case required.

Of course, illiterate aliens who are exempted from the reading test are not barred if otherwise admissible. Such exemption requires proof of a continuous residence of five years immediately antedating the last departure from this country and a return within six months. The previous residence is not sufficient if its continuity is broken by more than six months. Navigazione Generale Italiana v. Elting (C. C. A.) 66 F.(2d) 537; Transatlantica Italiana v. Elting (C. C. A.) 74 F.(2d) 732. The facts disclosed by these aliens did not have any tendency to show that they were exempt from the reading test and not to be classed as the illiterates they were in fact.

It is argued that Ballerini as an intended temporary vistor was a transient alien to whom the reading test was inapplicable, and Stadtmuller v. Miller (C. C. A.) 11 F.(2d)

732, 45 A. L. R. 895, has been called to our attention in support of that claim. The thought seems to be based upon nothing more substantial than that a transient and a temporary visitor are each temporarily within the country. While that is quite true, it is equally true that the terms are neither synonymous nor used in that way in the statute. The failure of this alien to seek admission as a matter of discretion has no effect upon the liability of the appellant. It brought him here as much at the risk of the failure of the alien to make application for a discretionary ruling as it did at the risk of the decision itself.

■■ The remaining cause of action in the Transatlantica Case relates to a fine imposed under section 16 of the Immigration Act of 1924 (8 USCA § 216) for bringing a quota immigrant, having a visa which specified him as a nonquota immigrant, to the United States by water from a foreign country other than contiguous territory. The appellant brought an alien to New York who prior to his embarkation at Naples on June 24, 1925, represented that he was Giuseppe Mauriello who had previously sailed from Naples on the steamship Giuseppe Verde on August 26, 1922, and had lawfully resided in the United States until January 17, 1925, when he returned to Italy on the steamship Dante Allighierri. Upon examination of its records, the appellant found that a Giuseppe Mauriello did sail from Naples as this man had stated, and that he was lawfully admitted to the United States on September 8, 1922. The alien had an income tax receipt dated at New York January 19, 1925, and an Italian consular passport dated at New York the same day. He also had a discharge from the Italian Army which described Giuseppe Mauriello as a man rather markedly different from the physical appearance of the applicant for passage. Upon examination before the Board of Special Inquiry he was shown to be an imposter. He was most certainly a quota immigrant having a nonquota visa, and the only question before us is whether the Secretary of Labor arbitrarily refused to remit the fine. The statute (8 USCA § 216) provides for its refund only if the Secretary of Labor is satisfied that the appellant did not know, and could not have ascertained by the exercise of reasonable diligence, before the departure of the vessel from the last port outside the United States, that the alien was a quota immigrant. While it is rather difficult to understand the refusal to remit the fine in this instance, we cannot say that it was unsupported by the evidence. The question of reasonable diligence is primarily for the Secretary to decide, and the burden to show it is on the appellant. Lloyd Sabaudo v. Elting, 287 U. S. 329, 53 S. Ct. 167, 77 L. Ed. 341. The discrepancies between the alien's statements and the papers he produced were enough to make it impossible to hold as a matter of law that the refusal was arbitrary. See Elting v. North German Lloyd, supra.

Judgments affirmed.