132

## BOOTH S. S. CO., LIMITED, v. UNITED STATES.

District Court, S. D. New York.
Dec. 5, 1938.

Hatch & Wolfe, of New York City (Henry P. Elliott, of New York City, of counsel), for petitioner.

Lamar Hardy, U. S. Atty., of New York City (David W. Wainhouse, of New York City, of counsel), for respondent.

COXE, District Judge.

This is a suit to recover steamship fines imposed for bringing three aliens to the United States. The aliens involved are Esteves, Ruela and da Silva. It is conceded that there can be no recovery in the da Silva case, but the claims relating to Esteves and Ruela are pressed for decision. Inasmuch as these two claims are based on different facts, they will be considered separately.

Esteves case:

This alien was a passenger on the S. S. Aidan of the Booth Line, leaving Para, Brazil, on May 29, 1928, and arriving at Ellis Island on June 11, 1928. He was refused admission on the ground that he was suffering from a gonococcus infection of the urethra. The record contains the usual certificate of the public health surgeons that, in their opinion, this condition "might have been detected by competent medical examination at the foreign port of embarkation."

The excluding decision was made on June 18, 1928, and notice of intention to impose a fine was served on Sept. 14, 1928. This notice is dated Sept. 13, 1928, and states that a hearing, if desired, will be allowed within sixty days after that date. The steamship company thereupon filed a protest accompanied by a general affidavit of the ship's doctor, stating that he had examined the alien at Para on May 28, 1928, and found him to be in good health. The Board of Review considered the protest on Sept. 22, 1928, and recommended that a fine be imposed and the passage money refunded. This recommendation was approved on Oct. 2, 1928.

On Oct. 31, 1928, an attorney representing the S. S. Aidan requested that action in the case be temporarily stayed to afford an opportunity for the submission of additional evidence in opposition to the fine. The Board of Review gave favorable consideration to this request, and on Nov. 2, 1928, "recommended that the commissioner be requested to ascertain if the money deposited on account of this alien is still in the custody of the Collector of Customs, and, if so, that he have the same retained until receipt of further instructions". Nothing appears to have been done with this recommendation until Dec. 6, 1928, when the assistant commissioner at Ellis Island advised the Department that the deposit made by the steamship company had been covered into the Treasury.

The case again came before the Board of Review on Dec. 12, 1928, and it was then recommended that "no change be made in the outstanding instructions", due to the fact that the deposit was then in the Treasury, and no longer "available for disposition". This recommendation was later approved by the Department.

On Dec. 13, 1928, the attorney for the steamship filed an additional affidavit of the alien; this was supplemented on Dec. 28, 1928, by a further affidavit of the ship's doctor. In the letter accompanying this latter affidavit, the request was made that "this material evidence be sent to Ellis Island and submitted to the public health surgeons who examined the alien on arrival, in the hope that the affidavit may cause those physicians to withdraw their opinion, rendered at the time of their examination, that the disease was in a discoverable form when the alien embarked at the foreign port." This request does not appear to have been acted on, but on Jan. 7, 1929, the case was reconsidered by the Board of Review in the light of the new affidavits, and it was recommended that no change be made in the original ruling. This recommendation was later approved by the Department.

The affidavits submitted on Dec. 13 and Dec. 28, 1928, gave detailed information regarding the first symptoms of the disease and the character of the examination made of the alien at the foreign port of embarkation. The alien in his affidavit stated that he was examined by Dr. Roffe at Para on May 23, 1928, and received "a certificate of good health". He also states that it was only on the "thirty-first day of May, two days after leaving Para for New York, on the steamer Aidan, that a case of gonorrhea made its appearance." The ship's doctor in his affidavit says that he examined the alien at Para on May 28, 1928, particularly with reference to venereal disease; he describes exactly how this examination was made; and he states that he found "no sign of a discharge". He further says that the period of incubation of gonorrhea is "from three to seven days", and that the alien did not see him "professionally throughout the voyage".

■ I think that these additional affidavits should have been submitted to the public health surgeons at Ellis Island, as required by the ruling in the Fusco case. Lloyd Sabaudo Societa Anonima Per Azioni v. Elting, 287 U.S. 329, 338, 53 S.Ct. 167, 77 L.Ed. 341. They contain detailed information of such a character as might well have affected the earlier certificate of detectability. I can see no reason, either, why this procedure should not have been followed, even though the deposit had been covered into the Treasury, and

the original protest had been rejected; for the Secretary undertook to rehear the case on its merits, and considered the new evidence in arriving at a decision. I do not think, therefore, that the fine in the Esteves case was legally imposed.

Ruela case:

This alien arrived at Ellis Island from Para, Brazil, on the S. S. Aidan, leaving Para on May 29, 1928, and reaching Ellis Island, June 10, 1928. He was excluded because he was afflicted with syphilis. The record contains a certificate of the public health surgeons similar to that appearing in the Esteves case. The alien testified before the Board of Special Inquiry that the disease "appeared the first time on board the ship".

The steamship company submitted with its protest an affidavit of the ship's doctor, stating that he had examined the alien on May 28, 1928, and found him free "from any contagious or infectious disease and to be in good health"; also, that during the voyage and "on or about June 3d", the alien came to him for consultation, and that upon examination he "found that he had developed a venereal sore of a hard nature".

■ The plaintiff concedes that the affidavit of the ship's doctor is not sufficiently detailed to require submission to the public health surgeons at Ellis Island under the ruling in the Fusco case. Lloyd Sabaudo Societa Anonima Per Azioni v. Elting, supra. But it is insisted that the alien's testimony that the disease "appeared the first time on board the ship" is enough in itself to invalidate the fine. The Secretary was not required, however, to accept this testimony as conclusive proof against detectability at embarkation; there was other evidence in the case that the alien had "developed a venereal sore of a hard nature" four days after leaving Para; and the public health surgeons certified after examining the alien at Ellis Island that, in their opinion, the disease might have been detected by means of a competent medical examination. The whole question before the Secretary was one of fact, and it cannot be said that there was no evidence to support his decision.

I do not think that the dictum in Navigazione Generale Italiana v. U. S., 2 Cir., 88 F.2d 608, cited by the plaintiff, has any application. That was a case of gonorrhea, which is quite different from syphi-

134

lis. I doubt, also, whether it was intended in that case to go so far as to intimate that even in a case of gonorrhea, the mere unsupported statement of the alien that he had no symptoms of the disease when he left the foreign port would be enough to destroy the effect of the certificate of the public health surgeons that the disease might have been detected by competent medical examination at the foreign port.

I, therefore, direct judgment for the plaintiff on the first cause of action (Esteves) for the amount asked in the complaint, and for the defendant on the second (Ruela) and third (da Silva) causes of action.