NAVIGAZIONE GENERALE ITALIANA v.
ELTING, Collector of Customs of Port
of New York.
No. 242.

Circuit Court of Appeals, Second Circuit.
March 8, 1937.

Lamar Hardy, U. S. Atty., of New York City (Charles J. Nager, Asst. U. S. Atty., of Rye, N. Y., of counsel), for the United States.

Kirlin, Campbell, Hickox, Keating & McGrann and Gaspare M. Cusumano, all of New York City (Delbert M. Tibbetts, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

Lamar Hardy, U. S. Atty., of New York City (Charles J. Nager, Asst. U. S. Atty., of Rye, N. Y., of counsel), for appellant.

Kirlin, Campbell, Hickox, Keating & McGrann and Gaspare M. Cusumano, all of New York City (Delbert M. Tibbetts, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

■ This is an appeal from a judgment for the plaintiff in an action to recover fines collected for unlawfully bringing three aliens into the United States. The first had trachoma, and the only question is whether a certificate of the carrier's examining doctor at the port of embarkation should have been submitted to the local surgeons in accordance with Fusco's Case (Lloyd Sabaudo Societa v. Elting), 287 U.S. 329, 338–340, 53 S.Ct. 167, 171, 172, 77 L.Ed. 341. The certificate merely said that the alien had been examined at the time of embarkation and previously at the "Royal Emigrants Home," and that he did not then appear to be afflicted with any disease of the eyes. Such a certificate need not be submitted to the local surgeons. Compagnie Generale Transatlantique v. Elting, 73 F.(2d) 321 (C.C.A.2); Navigazione Generale Italiana v. Elting, 77 F.(2d) 270 (C.C.A.2); Cunard S. S. Co. v. Elting, 87 F.(2d) 309 (C.C.A. 2).

■ The other two aliens had ringworm and should have been excluded, though they were eventually admitted unlawfully. Notwithstanding this the fines were lawfully imposed. Lamport & Holt v. Elting, 74 F.(2d) 238 (C.C.A.2); Cunard S. S. Co. v. Elting, supra. There would be nothing to discuss except for the fact that the fines were imposed in April and May, 1924, while the immigration rules, promulgated on February 1, 1924, were in effect. The plaintiff's argument is that by Rule 22 of these, i. e., that entitled "Imposition and Collection of Fines," the Secretary had abdicated all discretion, once his medical examiner certified that an alien was suffering from a disease which excluded him under the Immigration Act of 1917 (39 Stat. 874), and that this the carrier could have detected. The first of the six "subdivisions" of the rule was entitled "When Fines Assessable," and declared when the carrier "shall pay" a fine under the act of 1917 or the Quota Act of 1921 (42 Stat. 5). The first "paragraph" of this "subdivision" read that "whenever the medical examiner certifies" that the alien is suffering from an excludable disease which might have been detected "the vessel or transportation agency shall pay" the fine prescribed. The second "paragraph" provided that "in the case of aliens" mentally disordered or suffering from physical disability, "when certified as in paragraph 1, the vessel or transportation agency shall pay" the fine. "Paragraph" 3 related to diseased seamen and was in form like the second; we assume that all three required the carrier to "pay" the fine to the collector upon the mere certificate of the examiner; the question is whether the certificate was to be conclusive evidence of the collector's power to keep it. The second "subdivision" prescribed that a notice must be sent to the master, agent or the like that the facts "indicate that a fine should be imposed." This notice was to give him thirty days to submit his evidence and to advise him that the vessel might be cleared if the amount claimed in the notice were deposited "as security for the payment of the fine in the event that it should be imposed." The third "subdivision" provided for service of the notice and that the collector should withhold clearance until "the deposit is made"; the fourth, that nothing more should be done for thirty days, or "until earlier submission of evidence" by the carrier. This evidence was to go to the Immigration Bureau with the examiner's certificate and a statement of the local officer as to imposing the fine.

It will be observed that so far, although the money must be "paid" to the collector, it was only as "security" in case the fine "should be imposed." The fifth "subdivision" showed how it should be; it was entitled "Remission or Mitigation of Fine," and provided that the fine should be remitted "only upon a clear and convincing showing * * * that the imposition * * * would be unjust or inequitable under the shown circumstances of the particular case, including the submission of satisfactory evidence that the seamen were subjected to a competent medical examination before being signed on as members of the crew." Even without the concluding clause it would have been impossible to read this as forbidding an inquiry as to correctness of the surgeon's certificate; and that clause lays any possible doubt. There could be no conceivable reason for the carrier's showing that a diseased seaman had been examined when he signed on, unless the issue were open. The procedure

as a whole is entirely clear to anyone who will read it without bias. Nothing was intended to be final until the "Bureau" had made a general inquiry into the justice of imposing the fine in all the "circumstances of the particular case"; that inquiry would especially refer to the carrier's opportunity to protect itself by refusing to accept the alien; which would indeed be the very nub of the "equity" of imposing any fine at all.

Judgment reversed as to all three, aliens.