**UNITED STATES ex rel. CHEN PING ZEE et al. v. SHAUGHNESSY, District Director, New York District, Immigration & Naturalization Service.**

United States District Court
S. D. New York.
March 18, 1952.

Jackson G. Cook, New York City, for relators Wong Ah Wah and Lee Chou Shek.

Anita Streep, New York City, for relator Tong Ah Shu.

Ira Gollobin, New York City, for relator Wong You Fong.

Abraham Lebenkoff, New York City, for relator Chang Chie Mon.

Spar & Schlem, New York City, for relator Chen Ping Zee.

Myles J. Lane, U. S. Atty. for Southern District of New York, New York City, for respondent.

William J. Sexton, Asst. U. S. Atty., New York City, Lester Friedman, Attorney, Immigration & Naturalization Service, U. S. Department of Justice, New York City, of counsel.

DIMOCK, District Judge.

This is a habeas corpus proceeding brought by six Chinese aliens. They are all seamen who overstayed their leaves in the United States. Deportation proceedings have been held with respect to all of them and they have all been ordered

deported. Relators concede that they are in this country illegally, that they were accorded due and appropriate hearings on the question of their deportability and that the warrants of deportation were properly entered. They do object, however, to the direction that they be deported to China, thereby raising the issue of the lawfulness of the action of the immigration officials in fixing China as the place to which they are to be deported. Their claim is made under the provision of 8 U.S.C. Supp. IV § 156(a) embodying amendments made by the Internal Security Act of September 23, 1950, which reads: "No alien shall be deported under any provisions of this chapter to any country in which the Attorney General shall find that such alien would be subjected to physical persecution." No claim is made under the provision of that sub-section permitting the alien to specify the country to which he is to be deported. It is conceded on both sides that the relators have made an application before the Immigration Service under the quoted provision and that it has been decided adversely to them.

■ ■ The lawfulness of the place of deportation fixed by the immigration officials has long been recognized as a question that can be raised by an alien by a writ of habeas corpus. U..S. ex rel. Karamian v. Curran, 2 Cir., 16 F.2d 958; U. S. ex rel. Mensevich v. Tod, 264 U.S. 134, 44 S.Ct. 282, 68 L.Ed. 591; Glikas v. Tomlinson, D.C., 49 F.Supp. 104. The same rule has been applied since the amendment of the statute inserting the provision quoted above. U. S. ex rel. Harisiades v. Shaughnessy, 2 Cir., 187 F.2d 137, affirmed 342 U. S. 580, 72 S.Ct. 512.

It has been decided that an alien who makes the claim that he will be subjected to physical persecution in the proposed destination may not be deported without a finding by the Attorney General that he will not be so subjected. U. S. ex rel. Harisiades v. Shaughnessy, 187 F.2d 137, 142, supra.

■ It would be enough to say that the immigration service has read the statute too literally in this case and, instead of

making findings that there will be no persecution, has stated, "I do not find that if this alien is deported to China he would be subjected to physical persecution."

Assuming, however, that there were findings that the relators would not be subjected to physical persecution, the relators would still be entitled to relief.

Relators make two main contentions in their attack on the immigration officials' action. They contend that they have been denied procedural due process with respect to their claim under the quoted provision of the statute and that the finding made by the Acting Commissioner of the Immigration Service and the order for their deportation to China are arbitrary.

■ Although the constitutional rights of aliens have been the source of many vexing questions through the years, it seems to be established that aliens within the United States are entitled to procedural due process and a hearing in deportation proceedings. See Wong Yang Sung v. McGrath, 339 U.S. 33, 49, 70 S.Ct. 445, 94 L.Ed. 616. This has been established for a long time, at least, so far as concerns aliens, such as the ones in this case, who did not enter the country clandestinely and who have been here long enough to become part of the population. The Japanese Immigrant Case, (Yamataya v. Fisher) 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721. Cf. Kwock Jan Fat v. White, 253 U.S. 454, 40 S.Ct. 566, 64 L.Ed. 1010.

The question now arises whether that rule applies where aliens apply for the protection of the provision respecting persecution.

The language of the provision under consideration does not expressly confer discretion on the Attorney General. Yet, in another part of this subsection (which deals with the Attorney General's power to release aliens) also amended by the Act of September 23, 1950, the language used is "such alien may, in the discretion of the Attorney General * * *" supra. It is apparent that Congress in this same Act and subsection was careful to use specific language when it wished to confer discretionary powers upon the Attorney General.

■ Congress provided for a finding and the Court of Appeals has authoritatively construed the statute to mean that where an alien has made a claim that he will be subjected to persecution a finding that there will not be persecution is a condition to deportation.

■ In the face of this requirement of a finding, these relators cannot be deprived of a hearing and a reasoned determination. The finding envisaged by Congress that a particular alien would not be subject to persecution in China was not intended by Congress to be just a way of expressing the Attorney General's order for deportation to China. On the contrary it was intended to be just what the statute's language imports, a finding of fact. As such it can be made only after an investigation. In an investigation to determine the existence of a fact on which the power to deport the aliens to China depends, the alien (certainly if he is of the class having constitutional protection) is entitled to procedural due process. Procedural due process includes the right to a hearing and a reasoned, rather than an arbitrary, determination.

■ I conclude, therefore, that the relators in these cases are entitled to a hearing. That these relators have not been given such a hearing is all but conceded in these cases. At the least, it was conceded by respondent upon the second argument that, if relators were entitled to a formal hearing, they did not receive adequate notice. The relators were only notified to appear before immigration officials for an interview. They were not informed in advance as to the nature or purpose of the interview. At the interview, relators were questioned as to the basis of their claim and all of them testified that they would be persecuted if deported to China. Counsel for all of the relators were present at the interviews but they were only invited to ask questions along the same lines. In the case of Wong You Fong, it is alleged that the notice of the interview indicated that it would be held by the Investigations Section of the Immigration Service and it is said that it is the universal practice of that section to permit attorneys to be present at its examinations only as observers. In any event, about eight days after these interviews, most of the relators were subjected to another examination in New York without their counsel being present, and on the same day an "order" was issued in Washington, D. C. with respect to each of the relators. Except for the heading, date and caption, these "orders" are identical and read as follows:

"Pursuant to the requirements of Section 20 of the Act of February 5, 1917, as amended by Section 23 of the Internal Security Act of 1950, Public Law 831, 81st Congress, I do not find that if this alien is deported to China he would be subjected to physical persecution."

Below this appears the signature of Benjamin G. Habberton and the title "Acting Commissioner".

From the immigration files submitted in the various cases, it does not appear that relators were afforded an opportunity to present evidence, to know the evidence they would have to meet, or to argue on the question whether they would be subject to persecution in China. The "order" which determines this question does not indicate that anything was considered by the Acting Commissioner in deciding to record the fact that he made no finding that the alien would be subject to persecution and does not even hint at the basis or reasons for the determination.

In this connection, it might be well to quote the language of the Supreme Court in Lloyd Sabaudo Societa v. Elting, 287 U.S. 329, 339–340, 53 S.Ct. 167, 172, 77 L. Ed. 341, which also involved administrative action under the immigration laws:

"The act of Congress confers on the Secretary great power, but it is not wholly uncontrolled. It is a power which must be exercised fairly, to the end that he may consider all evidence relevant to the determination which he is required to make, that he may arrive

justly at his conclusion, and preserve such record of his action that it may be known that he has performed the duty which the law commands. Suppression of evidence or its concealment from a party whose rights are being determined by the administrative tribunal has been held to be so unfair as to invalidate the administrative proceeding."

That the record should fully set forth the administrative findings is further supported by Tod v. Waldman, 266 U.S. 113, 45 S.Ct. 85, 69 L.Ed. 195.

There is little doubt that these relators were not afforded the hearing that I hold is required by the statute.

Even if, arguendo, it be taken that the relators are not entitled to a hearing, it cannot be said that the Attorney General is free to act according to whim or caprice. The statutory provision in issue cannot be taken as granting the Attorney General power to act arbitrarily. See Joint Anti-Facist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624 (opinion of Burton, J.). In these cases, there is in the immigration files submitted to the court the testimony of the relators to the effect that they would be subject to persecution in China and there is no evidence to the contrary. The return merely takes the position that this testimony is unconvincing. In the present state of affairs in the world, it does not seem to me that a person's testimony that he would be subject to persecution in a Communist country can be dismissed so lightly and there is no indication or reason stated in the files or return that would tend to show that these relators would not be subject to persecution. On such a state of the record, I conclude that the determinations of the Acting Commissioner are arbitrary and therefore unlawful. U. S. ex rel. United States Lines on Behalf of Colovis v. Watkins, 2 Cir., 170 F.2d 998.

The writ will be sustained unless the Immigration Service proceeds in accordance with this opinion within 60 days.

Settle order on notice.