NG LIN CHONG v. McGRATH.

WONG LAI KING v. McGRATH.

Nos. 11183, 11217.

United States Court of Appeals
District of Columbia Circuit.

Argued April 14, 1952.

Decided July 3, 1952.

Lambert O'Donnell, Washington, D. C., for appellants.

Lewis A. Carroll, Asst. U. S. Atty., Washington, D. C., with whom Albert E. Reitzel, Asst. General Counsel, Immigration and Naturalization Service, Charles M. Irelan, U. S. Atty., Washington, D. C., at the time the brief was filed, and Joseph M. Howard, and William R. Glendon, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. George Morris Fay, U. S. Atty., Washington, D. C., at the time the record was filed, also entered an appearance for appellee.

Before WILBUR K. MILLER, PROCTOR and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Appellants are native citizens of China who entered the United States illegally—

Chong as a stowaway sometime during the years 1924 to 1926,[1] King without proper immigration documents or inspection in 1937. When they registered for the draft in 1942 and again when they applied for passports to visit China in 1947 and 1948, respectively, both Chong and King falsely swore that they were United States citizens. Upon their return from China at the completion of their visits, they were detained at the port of entry pending investigation. The investigations revealed their perjury, for which they were subsequently indicted and convicted.[2] Thereafter, in 1949, they were found by boards of special inquiry[3] to be excludable and were "ordered deported to China."[4] These determinations were affirmed in administrative appeals. In each case, more than two years elapsed between detention at the port of entry and the date finally set for deportation.

The present disputes turn on the Attorney General's authority to order deportation to China. Appellants seek refuge in § 23 of the Internal Security Act of 1950.[5] That section amended § 20 of the Immigration Act of 1917[6] without widening the scope of its applicability except in a manner not pertinent here. It did authorize greater flexibility in the deportation of aliens and the places to which they could be returned. It also added this proviso:

"The deportation of aliens * * * shall be directed by the Attorney General to the country specified by the alien, if it is willing to accept him into its territory * * *. No alien shall be deported under any provisions of

---

1. Brief for Appellee, p. 1. Brief for Appellant, p. 2, states simply that appellant Chong "entered the United States illegally between 1924–1926 * * *." Chong's complaint alleges that he "lawfully entered the United States about the year 1924." J.A., p. 22. This discrepancy is immaterial for the purposes of this case.

2. Chong pleaded guilty and was placed on probation for three years. J.A., pp. 22–3. King was sentenced to imprisonment. Id. at 31.

3. 39 Stat. 874, 887 (1917), 8 U.S.C.A. § 153.

4. Following these determinations, Chong and King were admitted into the United States on parole, and under bond. J.A., p. 23 (Chong); id. at 31 (King).

5. 64 Stat. 987, 1010 (1950), amending 8 U.S.C.A. § 156, hereafter referred to as amended § 20. Section 23 was enacted after the administrative determinations in these cases had been reached.

6. 39 Stat. 874, 890 (1917), as amended, 8 U.S.C.A. § 156, hereafter referred to as § 20.

this chapter to any country in which the Attorney General shall find that such alien would be subjected to physical persecution." [7]

Despite appellants' contentions that they would be subjected to physical persecution and possibly even loss of life if they were to return to China, neither the Attorney General nor the District Court thought they were protected by amended § 20. Instead they thought these cases were governed by § 18 of the Act of 1917.[8] That section, unlike amended § 20 or its predecessor, affords no alternative concerning the country to which the alien about to be deported should be sent. Nor does it contain the "physical persecution" proviso whose protection these appellants seek.

As we interpret the position of the Attorney General adopted by the court below, it is this: Amended § 20 applies to the deportation of those aliens who have *entered* the United States whether legally or illegally. All such aliens "shall, upon the warrant of the Attorney General, be taken into custody and deported." [9] Section 18, on the other hand, applies to the deportation of aliens who, upon seeking admission to our shores, are not allowed to *land* or *enter* the country. Such aliens "shall be detained on board the vessel bringing them, or in a United States immigration station * * *." [10] No warrant for their arrest need be issued by the Attorney General for their "temporary removal shall not be considered a landing * * *." [11] Since the removal of appellants and their subsequent release into the country on parole and under bond was not a landing or entry, they were found to be subject to the provisions of § 18.

We cannot agree with this view of the statutory scheme although we do agree that appellants never landed or entered the country within the meaning of our immigration laws.[12] Section 18 reads in part:

"All aliens brought to this country in violation of law shall be immediately sent back, in accommodations of the same class in which they arrived, to the country whence they respectively came, on the vessels bringing them, unless in the opinion of the Attorney General immediate deportation is not practicable or proper." [13]

By its terms, this section applies to those who are "brought" to our shores illegally. Such persons "shall be immediately sent back" on the vessels bringing them. This language contemplates an arrival which culminates in an *immediate* rejection of the alien. These provisions were "not aimed at the aliens of the excluded class, but at the owners of vessels unlawfully bringing them into this country." [14] One of its chief objectives was "to protect the alien" [15] from exploitation by the transportation companies. But whatever its historical origin, § 18 clearly distinguishes between immediate rejection of the alien and allowing him to stay when "in the opinion of the Attorney General immediate deportation is not practicable or proper."

These are not cases where appellants were "immediately sent back". Certainly, their first entries many years ago, albeit illegal, cannot be brought within the § 18 category. Nor, in our opinion, do their more recent arrivals which resulted in their detention, prosecution, parole, etc., qualify as a § 18 situation. Since appellants were not "immediately sent back * * * on

7. 64 Stat. 987, 1010 (1950), amending 8 U.S.C.A. § 156.

8. 39 Stat. 874, 887 (1917), as amended, 8 U.S.C.A. § 154.

9. 39 Stat. 874, 889 (1917), as amended, 8 U.S.C.A. § 155(a).

10. 39 Stat. 874, 881–2 (1917), as amended, 8 U.S.C.A. § 147.

11. 39 Stat. 874, 885 (1917), as amended, 58 Stat. 816 (1944), 8 U.S.C.A. § 151.

12. Kaplan v. Tod, 1925, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585; Nishimura Ekiu v. United States, 1892, 142 U.S. 651, 12 S.Ct. 336, 35 L.Ed. 1146; United States ex rel. Pantano v. Corsi, 2 Cir., 1933, 65 F.2d 322; Ex parte Chow Chok, C.C. N.D.N.Y.1908, 161 F. 627, affirmed 2 Cir., 1908, 163 F. 1021.

13. 39 Stat. 874, 887 (1917), as amended, 8 U.S.C.A. § 154.

14. United States v. Nord Deutscher Lloyd, 1912, 223 U.S. 512, 517, 32 S.Ct. 244, 245, 26 L.Ed. 531.

15. Ibid.

the vessels bringing them," we must assume that "in the opinion of the Attorney General immediate deportation [was] not practicable or proper." It is immaterial that his opinion rested upon a judgment that appellants should be prosecuted for a violation of our laws. And since § 18 provides no alternative authority for executing the orders of deportation in the event that deportation is not "immediate," the Attorney General must look elsewhere for authority to carry out the deportations in question here.

The only other source of authority for executing orders of deportation is amended § 20 of the Immigration Act of 1917. That section not only applies to "[t]he deportation of aliens provided for in * * * chapter [six] * * *,"[16] but, in addition, to "all other immigration laws of the United States * * *."[17] Although the records in the present cases do not reveal the statutory provision or provisions under which appellants were found excludable and hence deportable, we may assume from the stipulation of facts filed below in one of the cases[18] that it was either § 3 of the 1917 Act[19] or § 13(a) of the Immigration Act of 1924,[20] or both. Both of these sections are found in chapter 6. We agree with appellants that amended § 20 is applicable under the circumstances of their cases.[21]

This view of the relationship between §§ 18 and amended 20 accords with past administrative interpretation. As we have already stated, there were no changes in

amending § 20 which affect its applicability in these cases. Yet in cases decided before § 20 was amended and which involved circumstances similar to those of the present cases, the immigration authorities apparently held the view that deportation should be effected in the manner prescribed by § 20. In United States ex rel. Pantano v. Corsi,[22] the alien, an Italian citizen, left Italy and went to Canada in 1924. He remained there one month and then entered the United States illegally. He stayed until 1931 when he made a visit to Italy. Upon his return, he sought admission on the basis of a fraudulently obtained re-entry permit, but was excluded by a board of special inquiry and ordered deported to Italy. His testimony before the board of special inquiry resulted, however, in his being indicted and convicted for violating the immigration laws. After sentence therefor, he was taken into custody without warrant of arrest for deportation under § 20. In a habeas corpus proceeding, the court held that the alien could be proceeded against without the warrant of arrest.

The strength of the administrative conviction that § 20 rather than § 18 was applicable in the Corsi situation is indicated by the choice of the country to which Corsi was ordered deported. Exercising his discretion under § 20, the Secretary of Labor[23] ordered Corsi deported to Italy rather than to Canada. This choice of countries was apparently important to the Secretary, since he defended it in the habeas corpus action. Yet had the Secretary considered § 18 applicable, he could have

---

16. It so applied before amendment in 1950.

17. This phrase was added by 64 Stat. 987, 1010 (1950), 8 U.S.C.A. § 156(a).

18. J.A., pp. 28, 29 (Chong).

19. 39 Stat. 874, 875 (1917), as amended, 8 U.S.C.A. § 136(e).

20. 43 Stat. 153, 161–2 (1924), as amended, 8 U.S.C.A. § 213(a).

21. Appellants also argued, in effect, that if they had been subjected to "immediate deportation" within the meaning of § 18, they would be entitled to the protection of the 1950 amendment to § 20 since their deportation was "provided for in

* * * chapter [6] * * *." But the Attorney General argued that such a construction would render § 18 superfluous, an intention not to be imputed to Congress. He says that by not expressly repealing § 18 when it amended § 20, Congress reaffirmed an effective place in the statutory scheme for § 18. Since, as we have already indicated, our decision here rests on narrower grounds, it is unnecessary for use to resolve these conflicting contentions.

22. 2 Cir., 1933, 65 F.2d 322.

23. This authority was later transferred to the Attorney General.

avoided any question with respect to the country since that section makes it clear that if it were applied, Italy could be the only destination under the Corsi facts.

The more recent case of United States ex rel. Ling Yee Suey v. Spar[24] furnishes additional evidence of the administrative view on the problem now before us. There the aliens, natives of China, arrived in New York on November 25, 1941, from Singapore, as crew members of a British merchant vessel. They remained on board until April 11, 1942, under detention of immigration authorities, when they were arrested by New York police for engaging in a riot on board ship. While they were held for these charges, the vessel sailed from New York without them. After criminal charges against them were dismissed, they were taken into custody by the immigration authorities pursuant to warrants of arrest, and after hearings were ordered deported to India " 'because of enemy occupation of China' ", pursuant to § 20. We note the case because the immigration authorities did not even attempt to act under § 18, though we see no reason why, by the terms of appellee's argument in this court, such action would not have been clearly called for.[25]

■ We conclude that whenever the Attorney General chooses to delay deportation as long as he did in these cases for the purpose of prosecuting an alien who is subject to "immediate deportation," he cannot thereafter proceed to deport that alien under § 18 since the immediacy required for its application no longer exists. In that event, the procedures outlined in amended § 20 must be used.

Reversed.

PROCTOR, Circuit Judge, dissents.

24. 2 Cir., 1945, 149 F.2d 881, 882.

25. The same court later referred to this case in United States ex rel. Bradley v. Watkins, 2 Cir., 1947, 163 F.2d 328, 331, as follows, " * * * they [the

Chinese crewmen] could be excluded and deported because they had 'departed' from China 'destined' for the United States, even though their physical landing in custody of the police was not an 'entry.' "