UNITED STATES of America,
Plaintiff-Appellee,

v.

HOLLAND–AMERICA LINE, Defend-
ant-Appellant.

No. 215, Docket 23695.

United States Court of Appeals
Second Circuit.

Argued January 16, 1956.
Decided March 14, 1956.

Burlingham, Hupper & Kennedy, New York City (Herbert M. Lord and Robert F. Lynch, New York City, of counsel), for defendant-appellant.

Paul W. Williams, U. S. Atty., for the Southern District of New York, New York City (Eliot H. Lumbard, Asst. U. S. Atty., New York City, of counsel), for plaintiff-appellee.

Before MEDINA, HINCKS and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

Plaintiff, the United States, brought this suit for reimbursement of the expense of deporting an alien allegedly imported from England on a vessel belonging to the defendant, Holland-America Line. Upon the pleadings, affidavits, and records of the Immigration and Naturalization Service, the District Court granted summary judgment for the plaintiff.

The government's claim is based on Section 20 of the Immigration Act of

1917, formerly 8 U.S.C. § 156,[1] which, in pertinent part, reads as follows:

"The deportation of aliens provided for in this chapter shall, at the option of the Attorney General, be to the country whence they came or to the foreign port at which such aliens embarked for the United States; * * * or, if such aliens are held by the country from which they entered the United States not to be subjects or citizens of such country, and such country refuses to permit their reentry, or imposes any condition upon permitting reentry, then to the country of which such aliens are subjects or citizens, or to the country in which they resided prior to entering the country from which they entered the United States. If deportation proceedings are instituted at any time within five years after the entry of the alien * * * the deportation from [the] port shall be at the expense of the owner or owners of such vessels or transportation line by which such aliens respectively came * * *. If deportation proceedings are instituted later than five years after the entry of the alien, or, if deportation is made by reason of causes arising subsequent to entry, the cost thereof shall be payable from said appropriation."

In September, 1943, the government instituted deportation proceedings against Anna Margaret Stratton, an alien, who, it is alleged, arrived here in 1939 on board the S.S. Veendam. The alien was found to be deportable on three grounds, two of which existed at the time of entry and a third which had not been affirmatively shown to have arisen subsequent to entry. A warrant issued for her deportation, to Argentina, "at the expense of the steamship company on whose vessel she was brought to the United States * * *." Demands that the defendant either effect or pay for deportation to Argentina hav-

ing been made without avail, the government deported the alien at its own expense, which it now seeks to recover.

Defendant contends here, as it did before the court below, that it is entitled to a trial on the identity of the alien, as to when she became deportable, and as to whether she was deportable to Argentina at defendant's expense, all of which it asserts are disputed material facts.

The District Court brushed aside as frivolous any question as to the identity of the alien. We agree that defendant cannot seriously question whether the Anna Margaret Stratton it imported is the same Anna Margaret Stratton who was subsequently deported to Argentina. That she was the same person is amply established by numerous documents, including the manifest of the S.S. Veendam, containing identifying data, fingerprints of the alien and her photograph. Moreover, the alien herself testified, at her deportation hearing, that she had come here in 1939 on the S. S. Veendam and appellant's counsel in effect conceded this issue on oral argument.

A recurring suggestion in the opinion below is that the defendant lacks standing on the issues of deportability and the place to which deportation may be made under the terms of the statute. The defendant, however, expressly disclaims any attempt to question deportability, and its argument, as we understand it, is simply this: that it has a constitutional right to be heard on whether "deportation [was] made by reason of causes arising subsequent to entry" and on whether it was made to an authorized place, because these are the facts on which Section 20 imposes liability on the shipowner, citing Lloyd Sabaudo Societa Anonima Per Azioni v. Elting, 287 U.S. 329, 53 S.Ct. 167, 77 L.Ed. 341. We do not decide this question, however, because the case can be disposed of on non-constitutional grounds.

1. Now Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1253.

We hold that there is no material issue of fact as to when the cause for deportation arose. The alien was ordered deported on the ground, *inter alia*, that she was a person of constitutional psychological inferiority at the time of her entry, and the record sufficiently establishes this fact. In 1942 she was taken to Bellevue Hospital for observation on the request of the F. B. I., to whom the alien had written a number of strange letters. That observation resulted in a recommendation that she be committed to a mental institution, and, very shortly thereafter, the alien was transferred to Central Islip State Hospital, where she remained as a public charge until she was deported in 1948.

Her clinical history at Central Islip, introduced in evidence at the deportation hearings, relates an interview given by the alien's only relative in this country, a sister-in-law, at the time the alien was first hospitalized. This relative is quoted as having said that "She [the alien] has delusions of grandeur and persecution. She thinks the ministers are trying to seduce her by television. * * * She has those ideas for 1½ years. She was put in an institution. She has been writing letters to the President, Mayor and Police Commissioner." The informant also stated that she "always knew that [the alien] was not well-balanced." This medical history, which was kept from June, 1942, until April, 1943, by a Dr. Smalley, who had the care and supervision of the alien, concludes with the mental diagnosis of "Paranoid Condition." Dr. Papa, who subsequently assumed immediate supervision of the alien, submitted a sworn statement which is also of record. This too diagnoses the alien as suffering from a chronic paranoid condition. Dr. Papa also attested that the alien "was of constitutional psychopathic inferiority at the time of her entry into the United States."

To refute the extensive record submitted by the government, defendant offers only an excerpt from a letter by the director of Central Islip to an Immigration Officer stating "apparently since her last entrance to the United States in 1939 [the alien] has developed persecutory delusions * * *." But the mere fact that certain symptoms developed after 1939 is certainly no evidence that the alien in 1939 was not a person of constitutional psychopathic inferiority, nor, apparently, did the writer intend such an implication.

Defendant also asserts that if it was liable for deportation expense, its liability was only to return the alien to England, whence she had been brought, because that was the country to which the statute directed deportation under the circumstances of this case. The government concedes the defendant's right to raise this issue, but contends that the record conclusively establishes that the alien was a citizen or native of Argentina. This may be so, but we do not see that it is of much help to the government. For the statute authorizes deportation to the country of citizenship, as such, only "if such aliens are held by the country from which they entered the United States not to be subjects or citizens of such country, and such country refuses to permit their reentry or imposes any condition upon permitting reentry."

Nor is the government brought within the "if" clause by the letter from the British Consulate raising the possibility that the alien might have "lost" her British citizenship and suggesting that deportation to Argentina, where her mother and a sister lived, would be "infinitely to her advantage." The entire purport of the letter is too tentative, too exploratory to constitute either a refusal of or a condition upon entry. And, in fact, neither the lower court nor the government relies on the "if" clause. We cannot tell whether, on the remand which we are about to order, further evidence, in addition to the letter from the British Consulate, will be produced.

The District Court held, rather, that under Section 20 the Attorney General could order the deportation of the alien

either to the country of her citizenship or to that of her birth, as "the country whence" she "came." While this construction appears either to render the statute unintelligible or else to make the "if" clause surplusage, it, nevertheless, is not without some support in other circuits. See Seif v. Nagle, 9 Cir., 14 F.2d 416; Schenck ex rel. Capodilupo v. Ward, 1 Cir., 80 F.2d 422. Nor are the cases in this circuit entirely harmonious. Compare United States ex rel. Hudak v. Uhl, D.C.N.D.N.Y., 20 F.Supp. 928, affirmed in open court, 2 Cir., 96 F. 2d 1023 with United States ex rel. Karamian v. Curran, 2 Cir., 16 F.2d 958.

■ In any event, we have considered the question anew, concluding that our construction of this statute in United States ex rel. Karamian v. Curran, supra, was correct, and that the country whence an alien comes is not synonymous with the country of citizenship or of birth, although obviously these may coincide. Affirmatively, we hold that, within the meaning of the statute, the country from whence an alien comes is that country in which the alien has a place of abode and which he leaves with the intention of coming ultimately to this country. This need not be technically either a residence or domicile, United States ex rel. Karamian v. Curran, supra, though no doubt it will in fact often prove to be the country in which the alien was last domiciled. Cf. United States ex rel. Di Paola v. Reimer, 2 Cir., 102 F.2d 40; United States ex rel. Mazur v. Commissioner of Immigration, 2 Cir., 101 F.2d 707. Only if such country refuses to admit the alien or puts conditions upon his entry, may the Attorney General elect to deport the alien to his country of birth or citizenship or to the country in which he resided prior to entering the country from which he came here.

■ Under this construction, the case must be remanded unless the record establishes conclusively that Argentina is also the country "whence" the alien came. We hold that it does not. For plaintiff stated, in answer to an interrogatory, that "England" was the country whence she came. The administrative record also contains a statement by the alien's sister-in-law that the alien's announced intention in going to England, just prior to returning here, was to make her permanent home there. Thus, there is a question of fact as to the country from which the alien came.

We find it unnecessary to discuss the other points argued in the briefs.

Reversed and remanded.