**Petition for Writ of Habeas Corpus for Mile MILANOVIC.**

United States District Court
S. D. New York.
Feb. 21, 1957.

Delson, Levin & Gordon, New York City, for relator. Ernest Fleischman, New York City, of counsel.

Paul W. Williams, U. S. Atty., for the Southern District of New York, New York City, for respondent. Roy Babitt, Sp. Asst. U. S. Atty., New York City, of counsel.

PALMIERI, District Judge.

Relator, Mile Milanovic, is an alien who has been held excluded from entering the United States and ordered deported to Yugoslavia. Milanovic, claiming that he will be subject to physical persecution in Yugoslavia and that Yugoslavia is not the country "whence he came" to the United States, brought this petition for habeas corpus to test the destination of his deportation.

Mile Milanovic was born in Yugoslavia in September, 1925, and lived there with his parents until the outbreak of World War II. During the war, he served in the Royal Yugoslav Navy and also fought the so-called Titoists in Yugoslavia. His father was killed by the latter; his mother still lives in that country. After the war, he could not return to live under the prevailing régime and instead spent two and one-half years in a displaced persons camp maintained by England in Italy. He was released from the camp

when he shipped out as a crewman on an Italian vessel. When the ship arrived in New York harbor, he was not paid for his three-month tour of duty and the ship captain threatened to return Milanovic to the displaced persons camp. Fearing the probability of being deported to Yugoslavia, Milanovic escaped from his confinement aboard ship, swam to a tugboat, and was taken to Ellis Island. He was held to have entered illegally, but avoided deportation by finding employment under a former captain in the Royal Yugoslav Navy who was then piloting a Panamanian vessel. After a number of voyages, the ship was sold and Milanovic left rather than take a drastic pay cut. Since the Belgian Government would not allow him to remain in the port where he was then located, the owners of the vessel transported him to New York where he expected to ship out for better wages. Upon his arrival in January, 1949, the Immigration Service detained him, held a hearing, and ordered Milanovic excluded as an immigrant not in possession of an unexpired immigration visa, and as an alien not in possession of a valid passport or other official travel document. Milanovic lost an appeal to the Board of Immigration Appeals, and then won a parole to give him an opportunity to become admitted by private Congressional bill. He also sought to comply with various other procedures for admission into the United States, but neither avenue brought success. The Immigration and Naturalization Service, unable to obtain consent from the Belgian Government for Milanovic's entry into that country, obtained consent from Yugoslavia, and in August, 1956, Milanovic was ordered deported to Yugoslavia. Subsequently, deportation was delayed to allow both Milanovic and the Service to seek his entry into a different nation, but all such attempts proved unavailing. When the Service again took action to enforce its order, Milanovic brought this petition.

 The Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 et seq., which is the law applicable to the matter before me, see United States ex rel. Harisiades v. Shaughnessy, 2 Cir., 1951, 187 F.2d 137, affirmed 1952, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586; United States ex rel. Wiczynski v. Shaughnessy, 2 Cir., 1950, 185 F.2d 347; United States ex rel. Pizzuto v. Shaughnessy, 2 Cir., 1950, 184 F.2d 666; cf. Imm. & Nat. Act § 405 (1952), 8 U.S.C.A. § 1101 note, contains two procedures for deportation.[1] An excluded alien is deportable under section 237, 8 U.S.C.A. § 1227(a), which reads as follows:

"§ 1227. Immediate deportation of aliens excluded from admission or entering in violation of law—Maintenance expenses

"(a) Any alien (other than an alien crewman) arriving in the United States who is excluded under this chapter, shall be immediately deported to the country whence he came, in accommodations of the same class in which he arrived, on the vessel or aircraft bringing ·him, unless the Attorney General, in an individual case, in his discretion, concludes that immediate deportation is not practicable or proper. * * * "

An alien in the United States who is to be expelled is deportable [2] under section 243, 8 U.S.C.A. § 1253, which reads as follows:

"§ 1253. Countries to which aliens shall be deported—Acceptance by designated country; deportation upon nonacceptance by country

"(a) The deportation of an alien in the United States provided for in

---

1. These two different procedures were applicable as well when Milanovic arrived in the United States in January of 1949. See Imm. & Nat. Act §§ 18, 20 (1917); 39 Stat. 887, 890. Now 8 U.S.C.A. §§ 1227, 1252.

2. *Exclusion* signifies the treatment of an alien who has never "entered" the United States. *Expulsion* signifies the treatment of an alien who has "entered" the United States. *Deportation* signifies the transfer of an alien, excluded or expelled, from this to a foreign country.

this chapter, or any other Act or treaty, shall be directed by the Attorney General to a country promptly designated by the alien if that country is willing to accept him into its territory, unless the Attorney General, in his discretion, concludes that deportation to such country would be prejudicial to the interests of the United States. * * * If the government of the country designated by the alien fails finally to advise the Attorney General within three months following original inquiry whether that government will or will not accept such alien into its territory, such designation may thereafter be disregarded. Thereupon deportation of such alien shall be directed to any country of which such alien is a subject national, or citizen if such country is willing to accept him into its territory. If the Government of such country fails finally to advise the Attorney General or the alien within three months following the date of original inquiry, * * *, whether that government will or will not accept such alien into its territory, then such deportation shall be directed by the Attorney General within his discretion and without necessarily giving any priority or preference because of their order as herein set forth either—

"(1) to the country from which such alien last entered the United States;

"(2) to the country in which is located the foreign port at which such alien embarked for the United States or for foreign contiguous territory;

"(3) to the country in which he was born;

* * * * *

"(7) if deportation to any of the foregoing places or countries is impracticable, inadvisable, or impossible, then to any country which is willing to accept such alien into its territory.

"Deportation during war

"(b) If the United States is at war and the deportation, in accordance with the provisions of subsection (a) of this section, of any alien who is deportable under any law of the United States shall be found by the Attorney General to be impracticable, inadvisable, inconvenient, or impossible because of enemy occupation of the country *from which such alien came* or wherein is located the foreign port at which he embarked for the United States * * *, such alien may, in the discretion of the Attorney General, be deported as follows: (emphasis supplied)

* * * * *

"Withholding of deportation

"(h) The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason."

Milanovic, although cognizant of the difference between exclusion and expulsion, asks that § 243(h) and the suspension of deportation provisions of § 244, 8 U.S.C.A. § 1254,[3] be held applicable to the deportation pursuant to his exclusion. He relies for his argument on the broad wording of § 243, his seven year residence while paroled in this country, and the case of Ng Lin Chong v. McGrath, 1952, 91 U.S.App.D.C. 131, 202 F.2d 316. Except for the last, which presents an arguable point, these contentions clearly lack merit.

■■ It has been settled that Congress has established, and that the Constitution requires, different procedures for those expelled from the procedures

---

**3.** Section 1254 authorizes the Attorney General to suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence of certain classes of aliens who had "entered" the United States.

applicable to those excluded. Compare Shaughnessy v. United States ex rel. Mezei, 1953, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956, and United States ex rel. Knauff v. Shaughnessy, 1950, 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317, with Kwong Hai Chew v. Colding, 1953, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576. Even though some provisions of § 243 purport by their terms to be relevant to the entire field of deportation, the broad terms are to be deemed modified by the specific requirements of § 237. Jew Sing v. Barber, 9 Cir., 1954, 215 F.2d 906, certiorari granted 348 U.S. 910, 75 S.Ct. 296, 99 L.Ed. 714, judgment vacated and case dismissed because moot, 1955, 350 U.S. 898, 76 S.Ct. 175, 100 L.Ed. 790; United States ex rel. Lue Chow Yee v. Shaughnessy, D.C.S.D.N.Y.1956, 146 F. Supp. 3; Dong Wing Ott v. Shaughnessy, D.C.S.D.N.Y.1956, 142 F.Supp. 379; United States ex rel. Camezon v. District Dir. of Imm. & Nat., D.C.S.D.N.Y.1952, 105 F.Supp. 32. Furthermore, the alien has to be within the United States to meet the literal requirements of § 243 (h).

■■ It is also clear that an alien paroled into the United States has not "entered" the United States. See Imm. & Nat. Act § 212(d) (5), 8 U.S.C.A. § 1182(d) (5); Kaplan v. Tod, 1925, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585; Shaughnessy v. United States ex rel. Mezei, supra. Hence he is not "within the United States" so as to be able to invoke §§ 243(h) and 244. See last four cases cited in next preceding paragraph; cf., Ex parte Kurth, D.C.S.D.Cal., 28 F. Supp. 258, appeal dismissed on technical grounds, Kurth v. Carr, 9 Cir., 1939, 106 F.2d 1003 (no constitutional right to asylum).

In Ng Lin Chong v. McGrath, 1952, 91 U.S.App.D.C. 131, 202 F.2d 316, two Chinese immigrants were held excludable, but instead of being deported, were tried and convicted of a perjury they had committed during a prior residence in the United States. Subsequently, when the Government moved to deport them to China, they sought to get that destination changed by invoking the physical persecution clause of Int. Sec. Act § 23 (1950), amending Imm. Act § 20 (1917), the predecessor of § 243 of the 1952 Act. That clause directed that:

"No alien shall be deported under any provisions of this Act to any country in which the Attorney General shall find that such alien would be subjected to physical persecution." 64 Stat. 1010.

The Court directed that the Government had to furnish a hearing pursuant to this section, even though there had been no entry. According to the exclusion section (§ 18 of the 1917 Act), the Court reasoned, the Government had two courses of action with respect to an excludable person: "immediately [to send him] back, in accommodations of the same class in which [he] arrived, to the country whence [he] * * * came, on the vessel bringing [him]," and, unless "in the opinion of the Attorney General immediate deportation is not practicable or proper." Since the Attorney General selected the second alternative, the Court went on he could no longer avail himself of § 18 but had to proceed under § 20 which applied to "all * * immigration laws of the United States." Contra, United States ex rel. Camezon v. District Dir. of Imm. & Nat., supra.

In the instant case, no element other than the humanitarian one of alleviating the harshness of deportation to Yugoslavia motivated the Immigration Service. Thus, it is distinguishable from a suspension of deportation in order to subject an alien to criminal prosecution. Therefore, it is unnecessary for me to consider whether an assumption of personal jurisdiction over an alien sufficient to ground a criminal prosecution constitutes an admission of that alien into this land. Unless there is such an admission, the alien would not be "within the United States" so as to enjoy the benefits of § 243(h). See Jew Sing v. Barber, supra (distinguishing Ng Lin Chong v. McGrath by the change in wording between § 243(h) and § 23 of the 1950 Act); cf., Shaughnessy v. United States ex rel.

Mezei, supra, 345 U.S. at page 215, 73 S.Ct. 625, 97 L.Ed. 956 (confining, instead of deporting, an excluded person is an act of legislative grace, not an admission; *a fortiori*, so is paroling such a person).

■ I turn now to the second ground of Milanovic's argument: that, assuming he is to be treated under § 237, he cannot be deported to Yugoslavia because it is not the country whence he came. The Government contends that since Belgium will not acept him, for want of a more appropriate nation, Yugoslavia, as his place of origin and last established residence and as the home of his mother, is tantamount to such a country. Furthermore, it contends that habeas corpus is not available to test the propriety of the place to which an excluded person is destined.

For some time, the term "country whence he came" was given various interpretations.[4] In United States ex rel. Karamian v. Curran, 2 Cir., 1927, 16 F.2d 958, 961, the relator for a writ of habeas corpus was born in Persia. He was rescued from persecution in that country and sent to Mesopotamia, where he lived for three years. From there he went to India, where he stayed for three months, and then to France, where he lived for a year. Unable to get a passport to the United States, he sailed to Mexico with the intention of using that country as a means of gaining entrance into the United States. He stayed in Mexico for nine months, secretly entered the United States, was caught, imprisoned, and ordered deported to Persia. The Court, however, held that he had come from France, "because he had been there long enough to have a place of abode, whether it was technically a residence or domicile, or neither of them, [is not] material; he 'started' from France for the United States, so he 'came from' that country."

In two succeeding cases, however, the Second Circuit departed from its former rule, declaring that the country whence an alien came "has generally been held to mean the country of the alien's nativity, if it does not appear that he has acquired a domicile elsewhere." See United States ex rel. Di Paola v. Reimer, 2 Cir., 1939, 102 F.2d 40, 41; United States ex rel. Mazur v. Commissioner of Imm., 2 Cir., 1939, 101 F.2d 707, 709. The dispute between "nativity" and "abode" has recently been settled. In United States v. Holland-America Line, 2 Cir., 1956, 231 F.2d 373, 376, the Court, explicitly adopting the Karamian rule, held that an alien's citizenship or place of birth is not determinative of the country whence he came: "The country from whence an alien comes is that country in which the alien has a place of abode and which he leaves with the intention of coming ultimately to this country."

The instant case, however, presents a set of facts which cannot be properly categorized by either "abode" or "nativity." Milanovic is a stateless person, whose only residences since the end of the war have been a camp for displaced persons, bunks on two ships, lodgings such as are available to seamen on shore leave and the home of his American uncle in whose custody he has been paroled. Nor can his abode be identified artificially with the domicile of his origin. Not only has this doctrine been rejected by the Holland-America Line case, it cannot be used to define properly an identification with a country, under the circumstances of post World War II conditions of revolution, displaced persons or Communist vengeance.[5] Milanovic's return to the country of his birth, if such were ordered, would not be a return to the jurisdiction of the government which he left. Cf., Delany v. Moraitis, 4 Cir., 1943, 136 F.2d 129.

---

4. The phrase, "country whence he came" has been in the immigration and naturalization statutes since at least 1917. See Imm. & Nat. Act §§ 18, 20 (1917), 39 Stat. 887, 890. See also 36 Stat. 263, 265 (1910).

5. Cf., Reese, Does Domicile Bear a Single Meaning, 55 Col.L.Rev. 589 (1955) (Domicile should be defined according to the function it serves).

If Yugoslavia is not the country whence Milanovic came, is there another country to which deportation can be effected within the purview of the statutory scheme? It appears that his intention to come to the United States was formulated while he was in Belgium. Belgium, it would seem, is thus the country whence he came. This view is supported by assumptions in two opinions, both dealing with excluded aliens, that the country which the alien left to come to the United States is the country whence he came. See Shaughnessy v. United States ex rel. Mezei, 1953, 345 U.S. 206, 208–209, 73 S.Ct. 625, 97 L.Ed. 956, reversing 2 Cir., 1952, 195 F.2d 964, 966; United States ex rel. Paetau v. Watkins, 2 Cir., 1947, 164 F.2d 457, 459. Furthermore, the Holland-America Line case, although it required both "abode" and "intention of coming * * * to the United States" to fix the country whence an alien came, adopted a former decision which noted explicitly that "every case depends on its own facts." See United States ex rel. Karamian v. Curran, supra, 16 F.2d at page 961.

Belgium, it is true, denied Milanovic entry. This fact, however, should not suggest a change in the definition of "whence he came." The problem of the stateless person is unfortunately not a unique one, and the Immigration Service has precedent to guide its treatment of Milanovic. See Shaughnessy v. United States ex rel. Mezei, supra.

However valid is the substance of Milanovic's contentions, he cannot prevail unless he has the right to test the destination of his deportation by habeas corpus. The Service urges that as an excluded alien he has no such right. "The Bill of Rights is a futile authority for the alien seeking admission for the first time to these shores." Kwong Hai Chew v. Colding, 1953, 344 U.S. 590, 596 note 5, 73 S.Ct. 472, 477, 97 L.Ed. 576. "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." United States ex rel. Knauff v. Shaughnessy, 1950, 338 U.S. 537, 544, 70 S.Ct. 309, 313, 94 L.Ed. 317; Shaughnessy v. United States ex rel. Mezei, 1953, 345 U.S. 206, 208–209, 73 S.Ct. 625, 97 L.Ed. 956. Although the applicant for admission may test the *validity* of his exclusion by habeas corpus, unless he is an alien within the United States he is not entitled to Constitutional rights of procedural due process. *Ibid.* Furthermore, deportation of an alien to a country other than the one whence he came does not violate due process under the Fifth Amendment. United States ex rel. Ling Yee Suey v. Spar, 2 Cir., 1945, 149 F.2d 881.

In the instant situation, however, Congress has established procedures to which the Attorney General does not appear to be adhering. If such a departure were part of an expulsion case, there would be no question that the alien could test the destination of his deportation by habeas corpus. See United States ex rel. Karamian v. Curran, supra; United States ex rel. Di Paola v. Reimer, supra; United States ex rel. Mazur v. Commissioner of Imm., supra. And in United States ex rel. Paetau v. Watkins, 2 Cir., 1947, 164 F.2d 457, an exclusion case, the court entertained this writ without questioning the relator's standing to bring it.

I believe that the assumption of the Paetau case is supported by sound policy considerations. It is one thing to say that courts cannot interfere with conjoint action of Congress and Executive in a sphere where federal power is plenary. See Shaughnessy v. United States ex rel. Mezei, supra; cf., Youngstown Sheet & Tube Co. v. Sawyer, 1952, 343 U.S. 579, 592, 72 S.Ct. 863, 96 L.Ed. 1153 (concurring opinion of Jackson, J.). It is quite another, however, to give sanction to executive action inconsistent with procedures required by Congress. Because an excluded alien cannot stand on the Bill of Rights does not mean that he is powerless to seek judicial protection where he has a valid basis for asserting that he is aggrieved by the completely arbitrary action of government officials. See Shaughnessy v. United States ex rel. Mezei, supra, 345 U.S. at pages 218, 226–

227, 73 S.Ct. 625, 97 L.Ed. 956 (dissenting opinion of Jackson, J.).[6]

I therefore conclude that Mile Milanovic cannot be ordered deported to Yugoslavia. Submit order on notice.

6. "Because the respondent has no right of entry, does it follow that he has no rights at all? Does the power to exclude mean that exclusion may be continued or effectuated by any means which happened to seem appropriate to the authorities? It would effectuate his exclusion to eject him bodily into the sea or to set him adrift in a rowboat.

"Would not such measures be condemned judicially as a deprivation of life without due process of law? Suppose the authorities decide to disable an alien from entry by confiscating his valuables and money. Would we not hold this a taking of property without due process of law? Here we have a case that lies between the taking of life and the taking of property; it is the taking of liberty. It seems to me that this, occurring within the United States or its territorial waters, may be done only by proceedings which meet the test of due process of law."