Joseph STACHER, Petitioner,

v.

George K. ROSENBERG, as District Director, Immigration and Naturalization Service, Los Angeles District, Respondent.

No. 62–1299.

United States District Court
S. D. California,
Central Division.

April 22, 1963.

512

Gordon, Kidder & Price and Bruce I. Hochman, Los Angeles, Cal., for peti-tioner.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief of Civil Section, James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., for respond-ent.

CURTIS, District Judge.

Petitioner brings this complaint for a writ of habeas corpus to prevent his re-moval from the United States as ordered by the Immigration Service in an exclu-sionary proceeding brought under the provisions of Title 8 U.S.C. § 1221 et seq.

The petitioner, a native of Russia, came to this country as a twelve year old boy in July, 1912, and has resided here ever since. On May 12, 1930, he became a naturalized citizen, but on Sep-tember 12, 1956, his citizenship was cancelled on the grounds of fraud. On April 10, 1960, he visited in Rome with his wife from whom he was legally sep-arated and his children, one of whom was hospitalized in Switzerland, and re-turned July 19, 1960. On January 20, 1961, he again left for a two months' visit, returning on March 20, 1961, at which time he was held for deferred in-spection and released upon parole pend-ing an exclusionary hearing before a Special Inquiry Officer. At this hearing the Officer found, among other things, that the petitioner had been admitted to the United States for permanent resi-dence at New York on July 19, 1912. He further found that on December 9, 1953, in the Supreme Court of Saratoga, New York, the petitioner was convicted on his plea of guilty of conspiracy to commit crimes, among others, of forgery in the third degree and uttering a forged in-strument. The Special Inquiry Officer also found that the petitioner was not in possession of a valid, unexpired immi-grant visa. From these facts the Special Inquiry Officer concluded that the peti-tioner was excludable and accordingly or-dered the applicant to be deported from the United States. Thereafter, the Im-migration Service directed him to appear in the offices of Air France, the airline which transported him to this country upon the last leg of his last visit abroad, for the purpose of being deported to the "country whence he came * * *"

By this complaint petitioner seeks to enjoin his removal and deportation.

The Immigration and Nationality Act provides two methods of deporting an undesirable alien. There are exclusion-ary proceedings, Title 8 U.S.C. §§ 1226

and 1227[1] relating to aliens who are entering the United States and are applying for admission; and expulsion proceedings, Title 8 U.S.C. §§ 1251 and 1253, relating to aliens lawfully within this country but who have become deportable.

Since the petitioner has been a legal resident for over fifty years and since his undesirability results from his conduct here since coming to this country, his is the typical case for which the expulsion procedure was designed. However, since petitioner was challenged as he was re-entering the country after a short and temporary absence, the Service has chosen to proceed to deport the petitioner under the *exclusionary* provisions, which appear to be applicable as § 1101(a) (13) defines the term "entry" as "*any* (emphasis added) coming of an alien into the United States from a foreign port or place or from an outlying possession * * *."

We find therefore that the petitioner comes within the definition of an excludable alien and that the findings of the Special Inquiry Officer to that effect are proper. '

However, the petitioner contends that he is entitled to have his deportation destination determined in this hearing, and the cases appear to bear him out. In re Milanovic's Petition, D.C.N.Y.1958, 162 F.Supp. 890, affirmed, United States, ex rel. Milanovic v. Murff, 2 Cir., 253 F. 2d 941; United States ex rel. Chen Ping Zee v. Shaughnessy, D.C.N.Y., 1952, 107 F.Supp. 607.

To what country, then, may he be deported? Title 8 U.S.C. § 1227 provides that an excludable alien "shall be immediately deported to the country whence he came * * *." and no alternative is authorized. The term "country whence he came" has been given various interpretations. In United States

ex rel. Karamian v. Curran (2 Cir., 1927) 16 F.2d 958, the court held this phrase to mean a country in which the alien had resided long enough to have a place of abode, whether it was technically a residence or domicile or neither of them was not material. A further analysis of the cases appears in In re Milanovic's Petition (supra) where the court says:

"In two succeeding cases, however, the Second Circuit departed from its former rule, declaring that the country whence an alien came 'has generally been held to mean the country of the alien's nativity, if it does not appear that he has acquired a domicile elsewhere.' See United States ex rel. Di Paola v. Reimer, 2 Cir., 1939, 102 F.2d 40, 41; United States ex rel. Mazur v. Commissioner of Imm., 2 Cir., 1939, 101 F.2d 707, 709. The dispute between 'nativity' and 'abode' has recently been settled. In United States v. Holland-America Line, 2 Cir., 1956, 231 F.2d 373, 376, the Court, explicitly adopting the Karamian rule, held that an alien's citizenship or place of birth is not determinative of the country whence he came: 'The country from whence an alien comes is that country in which the alien has a place of abode and which he leaves with the intention of coming ultimately to this country.' "

The rule enunciated in United States v. Holland-America Line and re-asserted in In re Milanovic's Petition appears to us to be a proper rule.

Applying it in this case, it is apparent that the petitioner formulated his plans for his entire trip, including his return to the United States, while domiciled and personally present here and that there is no country other than the United States which could fit this

1. Section 1227 provides:
   "Any alien (other than an alien crewman) arriving in the United States who is excluded under this chapter, shall be immediately deported to the country whence he came, in accommodations of the same class in which he arrived, on the vessel or aircraft bringing him, unless the Attorney General, in an individual case, in his discretion, concludes that immediate deportation is not practicable or proper. * '* * "

description. Consequently, there is no other country to which the petitioner can be deported. This anomaly is not due to any fault of the Act. It arises because of a misapplication of the Act. Congress did not contemplate that the exclusionary procedures would be used in a typical expulsion case.

The respondent is therefore enjoined from removing or deporting the petitioner as an excludable alien.