Esterya MENON and Ruby Rebecca Menon, an infant under the age of 14 years, by her mother, Esterya Menon, Relators,

v.

P. A. ESPERDY, as District Director of the Immigration & Naturalization Service, U. S. Department of Justice, Respondent.

United States District Court
S. D. New York.

Nov. 15, 1965.

Esterya Menon, pro se.

Robert M. Morgenthau, U. S. Atty., New York City, for respondent, Francis J. Lyons, Asst. U. S. Atty., of counsel.

COOPER, District Judge.

Relators, Esterya Menon and her minor child Ruby Rebecca Menon, by this habeas corpus proceeding challenge the validity of an exclusion order and a subsequent notice which direct that they be deported to Turkey from New York on October 27, 1965.

Relators are under an order of exclusion pursuant to Section 236 of the Immigration and Nationality Act of 1952, 66 Stat. 200, 8 U.S.C. § 1226. Judicial review of such order is only obtainable through a habeas corpus proceeding as provided for by 8 U.S.C. § 1105a(b). One of the traditional prerequisites for the writ's issuance was that the relator be in actual "physical" custody.

■ Although the immigration authorities were not in physical custody of the relators on October 26, 1965 when the writ in the instant proceeding was issued, the Court's granting of the writ was supported by the authority of Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). See Varga v. Rosenberg, 237 F.Supp. 282, 285–286 (S.D.Cal.1964).

■ The writ brings into question not only the lawfulness of the final order of exclusion, but also the lawfulness of the place of deportation fixed by the immigration officials. United States ex rel. Karamian v. Curran, 16 F.2d 958 (2d Cir. 1927); United States ex rel. Chen Ping Zee et al. v. Shaughnessy, 107 F. Supp. 607, 609 (S.D.N.Y.1952). As authorized by statute, 8 U.S.C. § 1227(a), the place of deportation applicable to those excluded[1] is the "country whence he came."

## ORDER OF EXCLUSION

■ At the close of the exclusion proceedings which were held in response to Mrs. Menon's application of admission for temporary residence, the special inquiry officer rendered his decision on October 16, 1964. It ordered applicants excluded from admission to the United States.[2] This order was subsequently appealed to the Board of Immigration Appeals. The Board entered an order on April 6, 1965 sustaining the appeal and directing that the applicants be admitted as nonimmigrant visitors for pleasure for a period of three months under such conditions, including the exaction of a bond, as the District Director might wish to impose. No bond was posted. On July 13, 1965 the Board withdrew its order of April 6, 1965 and affirmed the October 16, 1964 order of the Special Inquiry Officer (the validity of which is reviewable in this proceeding).

■ The inquiry officer's findings of fact were adequately substantiated by the evidence in the administrative record, and are to be accorded great weight under the Act. See 8 U.S.C. § 1105a(a)(4). Both Mrs. Menon and her daughter are citizens of Turkey; they last arrived in the United States by train from Canada on June 25, 1964, and were "paroled" into this country in connection with their admission application. The inquiry officer found that Mrs. Menon had no residence in a foreign country; that she had no intention of leaving the United States within a fixed, definite period of time; and that she was likely to become a public charge.

Appearing *pro se* in open court in the instant proceeding, Mrs. Menon was later afforded an opportunity to be represented by Jules H. Coven, Esq. who appeared without fee.

---

1. See In re Milanovic, 162 F.Supp. 890 (S.D.N.Y.1957) aff'd sub nom United States ex rel. Milanovic v. Murff, 253 F. 2d 941 (2 Cir. 1958); United States ex rel. Tom We Shung v. Murff, 176 F.Supp. 253 (S.D.N.Y.1959) and the cases cited therein for a discussion of the differences between "exclusion" and "expulsion" proceedings.

2. The Order of October 16, 1964 read: "It is ordered that the applicants be excluded from admission to the United States under Section 212(a) (15) of the Immigration and Nationality Act as persons likely to become public charges; that they further be excluded under Section 212 (a) (26) of the Immigration and Nationality Act as persons not in possession of the appropriate valid nonimmigrant visas and under Section 212(a) (20) of the Immigration and Nationality Act as alien immigrants not in possession of valid immigrant visas and not exempted from the necessity for possessing and presenting such visas."

## VALIDITY OF ORDER OF EXCLUSION

■ There appearing to be no genuine issue of material fact, this Court is satisfied that as a matter of law [3] the order of October 16, 1964 (see note 2) excluding the aliens, is valid.

## PLACE OF DEPORTATION

As indicated, the place of deportation applicable to those excluded is the "country whence he came," and is an appropriate subject of inquiry in a habeas corpus proceeding even though the alien is properly deportable as here. The phrase, "country whence he came," has been variously construed since its inception in the Immigration Act of 1907, 34 Stat. 904, 905.

In re Milanovic, supra note one, is similar to the fact situation presented here. The Court in Milanovic found that Yugoslavia, the country of origin, was not the country from whence the alien came. Relator in that case fled from Yugoslavia, had thereafter lived in several temporary residences, and had formulated the intention to come to United States while in Belgium. The Court held that Belgium was the country from whence he came even though Belgium denied, but Yugoslavia would accept, his entry (162 F.Supp. at 896).

■ In affirming (sub nom.) the Court of Appeals said that the words:

[manifest] an intention, when an alien is excluded, that the situation existing before the arrival of the alien in this country be restored so far as is possible. It is enough to say that a return to Yugoslavia, a country from which Milanovic fled 13 years ago and with which he has severed all ties, would not be a restoration of the status quo contemplated by the statute.

United States ex rel. Milanovic v. Murff, as District Director of Immigration and Naturalization, 253 F.2d 941, 943 (2d Cir. 1958).

Similarly, to restore relators in the instant case to the "status quo" would be to send them to Switzerland as opposed to Turkey, a nexus to the former country having been clearly established from the following facts as revealed primarily by the Transcript of Exclusion Proceedings. Mrs. Menon was a resident of Israel from 1949–1953. After March 15, 1953 she resided in Switzerland and still considers herself a Swiss resident. (Transcript, p. 64.) Her child Ruby Rebecca Menon, the other relator herein, is a native of Switzerland; she was born there in 1956. Furthermore, relators were in possession of valid nonimmigrant visas issued by the American Consulate in Geneva on December 8, 1961 for unlimited application for admission to the United States, and first entered this country from Switzerland on January 2, 1962. They apparently formulated the intention to come to the United States while in Switzerland. Cf. Milanovic, supra, 162 F.Supp. at 896. Moreover, Mrs. Menon still has belongings and furniture in that country.[4] (Tr. p. 61.)

---

3. An alien "paroled" into the United States is not "within" the country so as to be able to be deported pursuant to 8 U.S.C. § 1253 as opposed to § 1226. In re Milanovic, supra note one 162 F.Supp. at 894. "For purposes of the immigration laws, moreover, the legal incidents of an alien's entry remain unaltered whether he has been here once before or not. He is an entering alien just the same, and may be excluded if unqualified for admission * * *." Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 213, 73 S.Ct. 625, 630, 97 L.Ed. 956 (1953).

4. The Court notes relator's other contacts in Switzerland. Her husband's bank account, which might be sequestered by her, is located there (Tr., p. 52). Her apartment which she hopes to reoccupy and which she visited for over a month in 1963 is also there (Tr., pp. 33–34). Switzerland, Mrs. Menon claims, offers for her and child greater economic opportunity than she is likely to find in Turkey; also a greater number of social contacts (Tr., p. 61).

On the other hand, the Government, in arguing that Turkey is the proper place of deportation, emphasizes at page 2 of their brief that "the aliens, on their arrival, presented Turkish passports valid only for entry to Turkey. There was no country in which they had a place of abode." The fact that relators have Turkish passports, manifesting that country's acceptance of their entrance there, is not controlling. In Milanovic, Yugoslavia, held not to be the country from whence the alien came, had also agreed to admit the deportee. Such permission was deemed to be immaterial. The fact that one country evidences its consent formally by means of a passport as opposed to consent informally communicated would also be immaterial in suggesting a change in the statutory definition of the "country whence he came." Cf. Milanovic, 162 F.Supp. at 896. Milanovic also makes clear that an alien need not have a place of "abode" in a particular country in order that it be regarded the place whence he came.

Thus, this Court is of the opinion that under the circumstances of this case, Switzerland, under law, is the "country whence he came." Cf. United States ex rel. Karamian v. Curran, 16 F.2d 958, 961 (2d Cir. 1927).

### HER CLAIM TO G–4 STATUS

The Court finds lacking in merit relator's argument that she is entitled as of right to "G–4" status since she is the spouse of a United Nations employee (under 8 U.S.C. § 1101(a)(15)(G)(iv). Such statutory grant is a matter of legislative grace involving the foreign relations of the United States with certain international organizations. See International Organizations Immunities Act of 1945, 59 Stat. 669. We need not decide here what reasons compelled officials at the United Nations to reach their decision. No basis appears, moreover, to inquire. Suffice it to say, that organization clearly rejected Mrs. Menon's claim; they rejected it in 1962 when her husband was last in the United States

and again in 1964 (Transcript, pp. 49, 55, 57). See Agreement Between the United Nations and the United States of America Regarding the Headquarters of the United Nations § 13, 61 Stat. 761–762 (1947). See also 8 C.F.R. § 214.2(g); 22 C.F.R. § 41.50(a); 22 C.F.R. § 41.90 (f).

### DISPOSITION

The order of exclusion is valid. However, it is ordered that relators shall not be deported to Turkey.

The writ is dismissed for proceedings not inconsistent with this opinion.

This shall be considered an order; settlement thereof is unnecessary.

So ordered.